Pedro Feliciano LAURIDO, Individually and on behalf of all other persons similarly situated, Plaintiff,

v.

Elliot J. SIMON, etc., et al., Defendants.

No. 78 Civ. 2432–CSH.

United States District Court, S. D. New York.

March 7, 1980.

Charles E. Carter, James I. Meyerson, N. A. A. C. P., New York City, for plaintiff; Legal Aid Society of Rockland County, Inc., Gene Reibman, Sharon Rivenson, New City, N. Y., of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, Robert A. Forte, Asst. Atty. Gen., New York City, of counsel, for defendants.

**MEMORANDUM OPINION AND ORDER**

HAIGHT, District Judge:

From October 12, 1971 until October 3, 1977, Pedro Laurido was employed as a porter at the Helen Hayes Hospital ("Hospital"), a New York State research and rehabilitation facility for the care and treatment of the physically disabled and deformed. *See* New York Public Health Law, Article 26 (McKinney 1977). Mr. Laurido, who resided at the Hospital during the period of his employment, enjoyed the status of a permanent New York State Civil Service employee.

On October 3, 1977 Laurido was placed on an involuntary leave of absence, pursuant to Section 72 of the New York State Civil Service Law, the text of which is set out in the margin.[1] The events precipitating Laurido's leave are not in dispute. At the behest of his Hospital employer, Laurido had been examined by Dr. Rubin Fleisher, a New York State Employee Health Service

1. "Leave for ordinary disability

"1. When in the judgment of an appointing authority an employee is unable to perform the duties of his position by reason of a disability, other than a disability resulting from occupational injury or disease as defined in the workmen's compensation law[ ], the appointing authority may require such employee to undergo a medical examination to be conducted by a medical officer selected by the civil service department or municipal commission having jurisdiction. If, upon such medical examination, such medical officer shall certify that such employee is not mentally fit to perform the duties of his position, the appointing authority may place such employee on leave of absence. An employee placed on leave of absence pursuant to this section shall be given a written statement of the reasons therefor. An employee on such leave of absence shall be entitled to draw all accumulated, unused sick leave, vacation, overtime and other time allowances standing to his credit.

"2. An employee placed on leave pursuant to subdivision one of this section may, within one year after the date of commencement of such leave of absence, or thereafter at any time until his employment status is terminated, make application to the civil service department or municipal commission having jurisdiction over the position from which such employee is on leave, for a medical examination by a medical officer selected for that purpose by such department or commission. If, upon such medical examination, such medical officer shall certify that such employee is mentally fit to perform the

duties of his position, he shall be reinstated to his position.

"3. An employee who is certified as not mentally fit to perform the duties of his position and who is placed on leave of absence pursuant to subdivision one of this section, or who is denied reinstatement after examination pursuant to subdivision two of this section, may appeal from such determination to the state or municipal civil service commission having jurisdiction over his position. Such commission may conduct such inquiry as it deems necessary or desirable, and shall provide for a medical examination of such employee, which shall be conducted by a medical officer designated by the commission who shall not be the same medical officer who examined the appellant under subdivision one or two in connection with the determination under appeal. If the commission finds that the determination appealed from is arbitrary or unreasonable, it shall direct the reinstatement of such employee.

"4. If an employee placed on leave pursuant to this section is not reinstated within one year after the date of commencement of such leave, his employment status may be terminated in accordance with the provisions of section seventy-three of this article." Civil Service Law, § 72 (McKinney 1973) (footnote omitted).

The State authorities have not promulgated rules or regulations as to the procedures to be followed under § 72. See text accompanying notes 6 & 13, *infra*.

Physician, on September 13, 1977. The reason for the Hospital's concern is alleged to have been Laurido's employment history at the Hospital of chronic alcoholism and incidents of assaultive and dangerous behavior.[2] Dr. Fleisher apparently concluded that Laurido was not mentally fit to perform the duties of his position and recommended to the Hospital that Laurido be placed on leave under § 72.[3] Although Laurido did not receive a copy of Dr. Fleisher's medical findings, report or recommendation, on October 3, 1977 he was advised orally and by written memorandum from defendant Gardineer, the Hospital's Associate Personnel Administrator, as follows:

> "The State doctor you saw in New York City on September 13, 1977 told us you cannot come back to work; [w]e are putting you on leave of absence; [y]our time accruals will allow you to be paid through october 28, 1977; [i]f you want half-pay, you must ask for it and must send a note from your doctor; [s]ince you will not be paid at full pay after October 28, 1977, you must leave your room on the grounds by that date. . . . ; [y]ou may not come to the hospital or try to report to work."[4]

On October 13, 1977, a memo from defendant Gardineer, hand delivered to Laurido, informed him of two available treatment programs for alcoholism and advised: "[you] cannot return to work until you have been treated, until your doctor sends a note saying you are better, *and* until the State Doctor agrees that you are able to return to work."[5]

An October 24, 1977 memo from defendant Gardineer addressed "To Whom It May Concern" reiterated that Laurido was un-able to perform his duties at the Hospital and that he had been placed on § 72 leave based on Dr. Fleisher's recommendation. Laurido's subsequent demands for reinstatement were refused. The three memoranda referred to constituted the only "written statement[s] of the reasons" for the Hospital's action given to Laurido. *See* Civil Service Law § 72(1), quoted at note 1, *supra.*

Laurido thereafter brought suit under 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, with jurisdiction premised on 28 U.S.C. §§ 1343(3) & (4), and 1331, on behalf of himself and all others similarly situated, seeking a declaration that § 72 was unconstitutional as violative of the Due Process and Equal Protection Clauses of the 14th Amendment; and an injunction prohibiting the defendants from taking action under § 72, and requiring the reinstatement with retroactive benefits of all persons placed on involuntary leave pursuant to § 72. The Administrator and Associate Personnel Administrator of the Hospital, the Commissioner of the State Department of Health, the President of the State Civil Service Commission (all in their official capacities), and the Department of Health and Civil Service Commission were named as defendants.

At the outset of the litigation, plaintiff moved for a preliminary injunction to restrain the operation and enforcement of § 72, summary judgment, and class certification. The motions were, however, held in abeyance on consent as the parties had entered into negotiations directed toward a consensual resolution of the litigation.

---

**2.** Affidavit of Thomas A. DiCerbo, Director of Agency Manpower Management of the Office of Public Health, Department of Health of the State of New York, at ¶ 5. *See also* Defendants' Memorandum of January 12, 1979 at 2; Defendants' Supplemental Memorandum of January 26, 1979 at 4. Plaintiff's counsel apparently does not dispute that Laurido had a drinking problem.

**3.** Plaintiff has submitted the affidavit of Dr. Pierino Graziosi, M. D., dated June 16, 1978 which states in pertinent part at ¶ 3:

> "On or about June 30, 1977, and December 16, 1977, I treated Pedro Laurido for minor physical complaints. On both occasions I found Mr. Laurido fully capable of understanding, reasoning, and answering all questions put to him. I further found Mr. Laurido fully capable of performing his duties as a porter at Helen Hayes Hospital."

**4.** Complaint ¶ 14.

**5.** *Id.* ¶ 15 (emphasis original).

Those negotiations have not borne fruit; consequently plaintiff's motions are now before me.

## I.

Defendants' original opposition to class certification, and declaratory and injunctive relief, was premised on two suppositions: first, that Laurido would be voluntarily reinstated to his position at the Hospital, retroactive to and with full benefits from October 3, 1977, the date of his original suspension; and second, that New York would adopt, by regulation, uniform statewide procedures respecting the implementation of § 72, which would be designed to meet certain constitutional objections to the statute,[6] such as were raised in this case and in the prior *Snead* litigation in this district.[7]

Neither of these eventualities has come to pass. I am advised, by defense counsel's letter of February 8, 1980, that Laurido will not be retroactively reinstated to his position absent a court order. Defendants would consent to the entry of such an order, although (in the words of counsel's letter) "plaintiff cannot be permitted to return to the actual performance of his job until it is finally established that he is physically and mentally competent." Further, by letter of January 24, 1980, defense counsel advised that the contemplated regulation was not adopted, the State having decided to pursue instead an amendment to § 72 of the Civil Service Law. Proposed legislation is pending before the State Legislature, which apparently has not yet acted on the matter.

Counsel has furnished the most recent proposals of the State Department of Law, respecting the pending legislation, and suggests that the Court might, in its decree, delineate minimum due process requirements with an eye to those proposals.

Under these circumstances, many of defendants' arguments against class certification no longer obtain. Since defendants have not seen fit to reformulate their opposition in light of the present situation, I will address such of defendants' contentions as appear to remain viable.

First, it is argued that under *Galvan v. Levine*, 490 F.2d 1255 (2d Cir. 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), class action treatment is unnecessary since a declaration that § 72 is unconstitutional and an order enjoining its enforcement would inure to the benefit of the putative class. I am unpersuaded by this argument for several reasons.

In my view, *Galvan* turned on two considerations which are absent here: the State's concession that the identical issue was presented with respect to all potential class members, and its affirmative commitment to apply uniformly any resulting judgment. *See Hurley v. Ward*, 584 F.2d 609 (2d Cir. 1978). In this case no such commitment or concession has been made. Indeed, the defendants argue, as is discussed in text, *post*, that Laurido's claim does not present legal and/or factual issues identical to the putative class claims.

A second distinguishing factor arises from the type of relief sought here on be-

6. *See* Affidavit of Robert Forte, Attorney for the Defendants, dated January 12, 1979; Affidavit of Harvey Randall, dated January 8, 1979. Mr. Randall serves with the Office of the Counsel of the defendant New York State Civil Service Commission.

7. *See Snead v. Department of Social Service*, 351 F.Supp. 1360 (S.D.N.Y.1972) (granting motion for 3 judge court; denying motion for temporary injunction); *Snead v. Department of Social Service of the City of New York*, 355 F.Supp. 764 (S.D.N.Y.1973) (granting declaratory and injunctive relief against § 72), *vacated*, 416 U.S. 977, 94 S.Ct. 2376, 40 L.Ed.2d 755 (1974) (remanding for further consideration in light of *Arnett v. Kennedy*, 416 U.S. 134, 94

S.Ct. 1633, 40 L.Ed.2d 15 (1974)); *Snead v. Department of Social Services of the City of New York*, 389 F.Supp. 935 (S.D.N.Y.1974) (adhering to prior ruling), *vacated*, 421 U.S. 982, 95 S.Ct. 1985, 44 L.Ed.2d 474 (1975) (remanding for consideration of mootness); *Snead v. Department of Social Services of the City of New York*, 409 F.Supp. 994 (S.D.N.Y.1975) (determining action not to be moot), *vacated*, 425 U.S. 457, 96 S.Ct. 1630, 48 L.Ed.2d 88 (1976) (dismissing complaint as to certain defendants for lack of standing), *rehearing denied*, 426 U.S. 942, 96 S.Ct. 2664, 49 L.Ed.2d 395 (1976); *Snead v. Department of Social Services*, 409 F.Supp. 995 (S.D.N.Y.1975) (entering judgment for back pay).

half of the class. The complaint seeks, *inter alia*, an order directing the reinstatement with back pay of all those unconstitutionally placed on § 72 leave. Construing *Galvan, supra*, the Second Circuit has stated: "*Where retroactive monetary relief is not at issue* and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment, a district court *may* decline certification." *Davis v. Smith*, 607 F.2d 535, 540 (2d Cir. 1978) (emphasis added) (vacated and remanded by the Court of Appeals on other grounds on February 23, 1979).

Finally, as is evident from the fact that Laurido was placed on § 72 leave under procedures previously condemned by a three-judge panel of this Court in the *Snead* litigation, see note 7, *supra*, there is reason to believe that principles of *stare decisis* will be unavailing to ensure class-wide relief absent certification. *See also, e. g.*, *Yaretsky v. Blum*, 76 Civ. 3360 (S.D.N.Y.) (order dated Dec. 13, 1977) (granting class certification when government defendants persisted in illegal practices after condemnation by Judge Weinfeld in *Feld v. Berger*, 424 F.Supp. 1356 (S.D.N.Y.1976) (denying class certification on basis of lack of necessity)); *Lewis v. Lavine*, 72 Civ. 4249 (S.D.N.Y. March 6, 1973) (certifying class where defendant failed to comply with earlier order in *Doe v. Lavine*, 347 F.Supp. 357 (S.D.N.Y.1972) (denying class certification as "unnecessary")); *Kilfoyle v. Heyison*, 417 F.Supp. 239, 243 (W.D.Pa.1976) (class action held necessary where State Department of Motor Vehicles failed to promulgate regulations or follow stipulated procedures in accordance with judgment on same issue in previous identical suit).

Plaintiff, the members of the putative class, and the State defendants are entitled to have the full scope of such judgment as may be entered herein made explicit and unmistakable. *Rodriquez v. Percell*, 391 F.Supp. 38, 41 n. 2 (S.D.N.Y.1975); *Paddison v. Fidelity Bank*, 60 F.R.D. 695, 697 (E.D.Pa.1973). *Compare McKinnon v. Pat-*terson, 568 F.2d 930, 935 & 940 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978) (confusion engendered on appeal respecting scope of declaratory judgment in non-class action). Considerations of judicial economy also militate in favor of treating the issue raised in this litigation on a dispositive class-wide basis, so as to avoid repetitious litigation and potentially inconsistent results. *Cf.* Fed.R.Civ.P. 23(b)(1)(A) & (B).

For the foregoing reasons, I do not find the *Galvan* decision to pose an obstacle to class certification, assuming the other criteria of Rule 23 to be met.

Turning to those requirements, the first, numerosity under Rule 23(a)(1), is related to the consideration of whether this action may be maintained as a Rule 23(b)(2) class. Plaintiff seeks certification of a class composed of "all Civil Service employees or potential Civil Service employees throughout the State of New York who have been and who are and will continue to be subject to Section 72 of the Civil Service Law of the State of New York." Motion For Declaration Of This Matter As A Class Action, at ¶ 2. If such a definition is appropriate, then clearly, the numerosity prerequisite is met. Defendants' rejoinder that because § 72 has been rarely invoked only a small number of persons have been subject to the involuntary leave procedure, is more appropriately directed to the question whether a sub-class of those actually on § 72 leave ought to be delineated. See text at Part II, *post.* It does not, in my view, reach the issue of whether the entire body of present and future permanent State Civil Service employees constitutes the proper class for the purposes of declaratory and prospective injunctive relief. *Cf. Marcera v. Chinlund*, 595 F.2d 1231, 1239 (2d Cir. 1979) ("[I]t is solidly established that a possible need for individual relief should not deter a court from certifying a class at that stage of the proceedings when the court is engaged only in resolving the merits of the plaintiffs' claims.").

The Advisory Committee Notes to Rule 23 are instructive on this point. Discussing the requirement of Rule 23(b)(2) that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby warranting final injunctive or declaratory relief with respect to the class as a whole, the Advisory Committee wrote:

"This subdivision [(b)(2)] is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate. . . . *Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class,* provided it is based on grounds which have general application to the class. Illustrative are various actions in the civil-rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration." 39 F.R.D. 69, 102 (emphasis added).

Here, the legality of § 72 on its face is challenged. Insofar as § 72 is a statute of general applicability, structuring the rights of all permanent Civil Service employees, a declaration of unconstitutionality and an order enjoining defendants from acting pursuant to § 72, will of necessity implicate the employer-employee relationship with respect to the putative class as a whole.

■ Civil rights actions seeking the vindication of federal constitutional rights "are the paradigmatic 23(b)(2) class suits, for they seek classwide structural relief that would clearly redound equally to the benefit of each class member." *Marcera v. Chinlund, supra,* 595 F.2d at 1240. Laurido was removed from his permanent Civil Service position under a statute that provides neither prior notice nor prior opportunity to contest the basis for the suspension. All permanent Civil Service employees, by virtue of their status as such, are likewise subject to § 72 removal. I conclude that an appropriate (b)(2) class, whose members are too numerous for practicable joinder, has been made out.

■ With respect to the remaining prerequisites of Rule 23(a), I find that a single overriding question of law permeates the litigation: Does § 72, as written, pass muster under the Due Process Clause of the 14th Amendment? Both Laurido's rights, and the rights of the class, turn on the answer; thus, the commonality requirement is met. Laurido is a member of the class he represents; his claim remains a live and typical challenge to the § 72 removal procedure. *See, e. g., Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975). The adequacy of Laurido as a class representative, *see generally Eisen v. Carlisle and Jacqueline,* 391 F.2d 555 (2d Cir. 1968), is evidenced by the continuing viability of his claim; the fact that he possesses no interest antagonistic to that of the class; and the circumstance that collusion between Laurido and the defendants is unlikely in the extreme. Furthermore, Laurido's counsel's efforts, both in this suit and in the earlier *Snead* litigation, assure that the class interests will be prosecuted effectively. *Id.* at 562.

In sum, I conclude that for the purposes of declaratory and prospective injunctive relief—that is, restraining the future application of § 72—this case is properly maintainable as a Rule 23(b)(2) class on behalf of all present and future permanent Civil Service employees of the State of New York.

## II.

The remaining issue under Rule 23 concerns the appropriateness of class treatment as to the issues of reinstatement and back pay. As mentioned earlier, defendants contend that § 72 has been invoked only rarely; allude to the "fact" that Laurido is the sole Department of Health employee on § 72 leave; and thus conclude that the numerosity factor is absent with respect to the class of persons who have actually been subjected to § 72 leave. Additionally, defendants

suggest that Laurido's case may be atypical in that § 72 perhaps should not have been invoked against him in the first instance. In any event, they posit, other class members may have been placed on § 72 leave under procedures differing from those used in Laurido's case.

■ I agree that because there has been no showing as to the actual number of persons on § 72 leave, class-wide treatment of the question of retroactive relief is inappropriate at this juncture. However, I do not agree that because § 72 may have been erroneously invoked in Laurido's case his claim thereby lacks typicality. It hardly needs stating that the requirements of procedural due process are meant to safeguard individuals against just such misguided government action. It is difficult to see how Laurido's situation is atypical, when the gist of his claim is that § 72 gave him no real opportunity to contest the State's determination that he was mentally unfit for his job. Whether one's challenge to the State's decision would be successful is immaterial in due process analysis; what is important is that one have the opportunity to make that challenge.

Whatever the merits of defendants' final argument that individual rather than common questions predominate with respect to those on § 72 leave, on the present record I am not prepared to certify a sub-class in respect of the question of retroactive relief. Plaintiff is not, however, bound by the defendants' recitation of the operative facts. To the extent that class claims for reinstatement and back pay will be pressed, plaintiff's counsel is entitled to test defendants' assertions through discovery on this facet of the case, particularly where, as here, the information is peculiarly within the defendants' possession and control. Accordingly, pending the completion of such

discovery, I reserve decision on whether the action may be maintained as a class action, on behalf of present and former permanent New York State Civil Service employees who have been placed on involuntary § 72 leave, for the purposes of granting such persons reinstatement together with retroactive pay and other benefits.[8]

### III.

The merits aspect of this litigation does not require extended discussion. The State has all but conceded that § 72 as written, and as applied to Laurido, does not afford procedural due process. I am entirely in accord with the decision of District Judge Weinfeld, the late Judge Bryan, and Circuit Judge Mulligan in the *Snead* litigation. There, the panel held that invocation of the § 72 procedure implicated constitutionally protected interests in liberty and property, 355 F.Supp. at 770–71; and that the 14th Amendment required the State employer to "conduct an adversarial hearing before placing civil service employees in permanent status on involuntary leave of absence for mental unfitness in the absence of exceptional circumstances requiring immediate action . . . ." *Id.* at 773. Because § 72 on its face, and as applied to the *Snead* plaintiff, failed to provide "a hearing containing the 'rudimentary due process' necessary to the accurate determination of the validity of the allegation [of mental unfitness]," *id.*, the Court declared § 72 unconstitutional; enjoined the defendants from taking any action under the statute; and ordered plaintiff's reinstatement with back pay. *Id.*

After the Supreme Court's vacation of judgment and remand for reconsideration in light of *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), *see* 416 U.S. 977, 94 S.Ct. 2376, 40 L.Ed.2d 755 (1974), the *Snead* panel adhered to and reaf-

---

8. In their discovery efforts, counsel should focus on the criteria enumerated in Rule 23(b)(3), in addition to the contentions raised in defendants' motion papers. Counsel might also consider the advisability of giving notice to such potential class members under Rule 23(c); the possibility that some might wish to intervene in, or opt out of, the action insofar as retroac-

tive relief is concerned; and the appropriate statute of limitations with respect to such claims. Because the contemplated discovery implicates the privacy interests of persons on § 72 leave, counsel are directed to settle an order of confidentiality on notice, prior to defendants turning over such information.

firmed its prior ruling, leaving it to the State to fashion appropriate procedures comporting with "rudimentary due process." 389 F.Supp. 935, 937 (S.D.N.Y.1974) (per curiam). Subsequent developments in the *Snead* litigation, see note 7, *supra*, did not vitiate the panel's essential holdings on the merits, which are not seriously challenged here, and I adopt those holdings in this case.[9]

9. In its several *Snead* decisions, the Supreme Court addressed neither the merits of the challenge to § 72 nor the panel's reasoning and conclusion respecting the statute's unconstitutionality. The Court's final ruling in *Snead, see* 425 U.S. 457, 96 S.Ct. 1630, 48 L.Ed.2d 88 (1975), was to the effect that the plaintiff lacked standing to challenge the constitutionality of § 72, the record having established that the statutory procedure had not in fact been followed in her case. The Court therefore vacated the District Court's judgment as to those defendants who had appealed therefrom and directed that the complaint be dismissed as to them.

In this case, there is no such challenge to Laurido's standing, it being clear that § 72 was in fact applied in his case.

10. It is clear that Laurido, and other permanent State Civil Service employees, have a cognizable state-engendered property interest in continued employment absent sufficient cause for dismissal or indefinite suspension. N.Y. Civil Service Law § 75 (McKinney 1973 & 1979–80 Supp.) *See, e. g., Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 578, 92 S.Ct. 2701, 2705, 2708, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 601, 603, 92 S.Ct. 2694, 2699, 2700, 33 L.Ed.2d 570 (1972); *Snead, supra* note 7, 355 F.Supp. at 771.

While the viability of the liberty interest claim is less clear, I am persuaded that the standards enunciated in recent cases are satisfied. Despite evolving public understanding of mental illness, a charge of mental unfitness is damaging to one's standing and association in one's community; clearly, it "diminishes a person's 'freedom to take advantage of other employment opportunities.'" *Snead, supra* note 7, 355 F.Supp. at 771 (*quoting Roth, supra*, 408 U.S. at 573–74, 92 S.Ct. at 2707); see also *Russell v. Hodges*, 470 F.2d 212, 217 (2d Cir. 1972). In the context of § 72, the charge of mental unfitness of necessity "occur[s] in the course of the termination of employment." *Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976).

I do not consider the fact that the charge of mental unfitness was not, in Laurido's case, made public to be fatal to the liberty interest

I find that placing a permanent Civil Service employee on an involuntary leave of absence based on a finding of mental unfitness implicates liberty and property interests protected under the Due Process Clause of the 14th Amendment.[10] Absent exceptional circumstances requiring immediate action,[11] before such an involuntary leave may be effectuated, the employee is entitled to notice of the facts on which the claim. In *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), the Supreme Court ruled in pertinent part:

"In *Board of Regents v. Roth*, 408 U.S. 564, [92 S.Ct. 2701, 33 L.Ed.2d 548], we recognized that the nonretention of an *untenured* college teacher might make him somewhat less attractive to other employers, but nevertheless concluded that it would stretch the concept too far 'to suggest that a person is deprived of "liberty" when he simply is not rehired in one job but remains as free as before to seek another.' Id., at 575 [92 S.Ct. at 2708]. This same conclusion applies to the discharge of a public employee *whose position is terminable at the will of the employer* when there is no public disclosure of the reasons for the discharge.

"In this case the asserted reasons for the City Manager's decision were communicated orally to the petitioner in private and also were stated in writing in answer to interrogatories after this litigation commenced. Since the former communication was not made public, it cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor, or integrity' was thereby impaired." *Id.* at 348, 96 S.Ct. at 2079 (emphasis added).

The *permanent* Civil Service status of those subject to § 72 removal, coupled with the obvious impact of a finding of mental unfitness on the employee's freedom to seek another job, distinguishes this case from *Bishop v. Wood.* Finally, Laurido clearly puts in issue the veracity of the Hospital's finding that he was mentally unfit to perform his duties as a porter. See note 3, *supra. Cf. Codd v. Velger*, 429 U.S. 624, 627, 97 S.Ct. 882, 883, 51 L.Ed.2d 92 (1977) (remedy for deprivation of liberty right is opportunity to refute charge; essential to allege that stigmatizing statements are false).

11. See *Snead, supra* note 7, 355 F.Supp. at 773. *Cf. Barry v. Barchi*, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); *Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979); *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977) (public interest may justify interim suspension pending prompt hearing to determine issues). Such exceptional circumstances would obtain when in the opin-

employer's determination is made and an adversarial-type hearing. Section 72 of the New York Civil Service Law, as written, fails to provide such minimal due process safeguards.[12]

Accordingly, the judgment to be entered herein will declare § 72 of the New York Civil Service Law unconstitutional; and will enjoin the defendants from taking any action thereunder. Although the *Snead* Court deferred to the State in the first instance to formulate appropriate procedures under § 72, some five years have now elapsed since the last *Snead* opinion and the State has taken no action to cure the statute's constitutional infirmities. Regulations were proposed but never implemented, and curative legislation remains stalled in the Legislature. As is evident from the procedures used in effecting Laurido's removal, due process has not been accorded on even an ad hoc basis. Because the time for judicial deference has now passed, the judgment will enjoin the defendants from placing any member of the certified class on involuntary leave of absence based on a finding of mental unfitness to perform the duties of his or her position unless prior thereto, absent exceptional circumstances, the following procedures are accorded the employee: [13]

1. Written notice of the facts relied upon by the appointing authority to suggest that the employee is not mentally fit to perform the duties of his or her position, in advance of the employee's examination by an Employee Health Services Unit physician.

2. Written notice of the Employee Health Services Unit physician's findings.

3. Written notice of the appointing authority's determination respecting involuntary leave, and the reasons and facts in support thereof.

4. Written notice of the employee's right to appeal the appointing authority's determination, and the procedures for perfecting such appeal.

5. Pre-hearing release to the employee or his or her authorized representative of the employee's medical records and related data, upon written request of the employee, or the employee's personal physician or attorney, where authorized.[14]

6. Upon timely request, an adversarial-type hearing, before an impartial decision-maker, at which hearing the employee may be represented by counsel and may present evidence on his or her own behalf.

7. Written notice of the hearing decision, together with a statement of the reasons and facts relied upon in support thereof.

Counsel may suggest such further provisions of the judgment as may seem appropriate.

### IV.

With respect to Laurido individually, I find that a due process violation has been established, by virtue of the defendants' failure to provide him with notice and a hearing prior to placing him on § 72 leave.

---

ion of the appointing authority an immediate suspension became essential for the safety of the employee, the employee's co-workers or the public, or for the proper conduct of public business. In such circumstances, while an immediate pre-hearing leave of absence may be directed, the procedures specified herein must be provided within a reasonable time thereafter. Should the employee succeed in reversing the initial determination, reinstatement together with back pay and the restitution of leave credits would be required.

12. In view of my holding that a due process violation has been made out, I do not reach the plaintiff's equal protection claim.

13. In the main, the specified procedures, including those respecting exceptional circumstances, see note 11, *supra*, follow the State Department of Law proposals. See text following note 7, *supra*.

14. Cf. *Yaretsky v. Blum*, 592 F.2d 65, 68 (2d Cir. 1979) (termination of Medicaid benefits; requiring pre-hearing disclosure of medical information to patients themselves on theory that "patients may not have a representative or relative sufficiently concerned about their well-being to seek out and present at the fair hearing the withheld information").

Accordingly, on defendants' consent,[15] the judgment will direct Laurido's reinstatement with pay and other benefits retroactive to the date of his suspension. Insofar as defendants contend that exceptional circumstances are present, see note 11, *supra*, which militate against Laurido actually resuming his duties at the Hospital, the procedures contemplated by this opinion may be invoked. The parties are directed to settle an appropriate judgment, on five (5) days' notice.

## V.

■ The final issue to be addressed concerns defendants' motion to dismiss, under Rule 12(b)(6), certain of the claims raised in Laurido's amended pleading. On January 26, 1979, Laurido served and filed an amended complaint asserting in addition to the claims previously raised, a claim for monetary damages in the amount of $10,000, as compensation for the alleged deprivation of constitutional rights and injury to reputation, meant to have been suffered as a result of the defendants' actions placing him on § 72 leave.

The principal argument in support of the motion is that given the breakdown in settlement negotiations under less than amicable circumstances, the delay in pressing a damage claim evidences its lack of merit. Such an attack on the amended complaint is inappropriate under Rule 12(b)(6), which focuses inquiry on whether the plaintiff could prove any set of facts in support of the claim which would entitle him to relief. *E. g., Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Whatever counsel's reasons for not alleging a damage claim

originally, the filing of an amended complaint was within plaintiff's rights under Rule 15(a), no answer having yet been served. Tactical maneuverings between counsel ought not defeat substantive rights.

■ Recovery of damages under § 1983 is contemplated by the statute itself;[16] and absent proof of actual injury, nominal damages are available for a deprivation of procedural due process. *Carey v. Piphus*, 435 U.S. 247, 267, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978). I conclude that the grounds asserted are insufficient to warrant dismissal of the amended complaint. Accordingly, the motion is denied.

One point remains. Although an immunity defense was alluded to in certain of defendants' earlier submissions, neither side has addressed the question whether under *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), damages would be available against these defendants. The individual defendants, who are sued solely in their official capacity, appear to be officers or agents of the State; so too, the Department of Health and the Civil Service Commission are State agencies. For this reason, the Court will require briefing on the question whether a damage suit against these defendants may go forward in this forum.

## CONCLUSION

1. Plaintiff's motion for class certification is granted in accordance with Part I of this opinion.

2. Plaintiff's motions for summary judgment and declaratory and prospective injunctive relief, on behalf of the certified class, is granted in accordance with Part III of this opinion.

---

**15.** *See* Letter of Robert A. Forte, Esq., counsel for defendants, dated February 8, 1980.

**16.** "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

The jurisdictional counterpart to § 1983 provides in pertinent part:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . .

"(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." 28 U.S.C. § 1343(4).

3. Plaintiff's motion for injunctive relief directing the named plaintiff's reinstatement with retroactive pay and benefits is granted in accordance with Part IV hereof.

4. Defendants' motion for an order dismissing the amended complaint is denied in accordance with Part V hereof.

5. The parties are directed to appear at a conference on March 28, 1980 at 2:00 p. m. in Room 705, to consider a schedule for the completion of such further proceedings as are contemplated herein.

It is So Ordered.