OPINION OF THE COURT
Walter B. Tolub, J.
Petitioner Sonia Barrett brings this CPLR article 78 proceeding following the failure of respondent Teachers’ Retirement System (TRS) to restore all back pay and leave credits to petitioner following her reinstatement to her position with TRS following an involuntary suspension. Petitioner also challenges the decision of respondent City of New York Office of Administrative Trials and Hearings (OATH) not to hear the issue of petitioner’s right to back pay and leave credits, based on OATH’s determination that it lacked jurisdiction over the matter.
I. Facts
Petitioner has been employed by TRS since 1988, and has held her current position, as associate retirement benefits examiner, since 1990. On October 29, 1996, petitioner was served with a notice from her supervisor suspending her without pay for “insubordination” until further notice. In a letter dated November 1, 1996, petitioner was served with a “Notice for Medical Examination Pursuant to Section 72 of the Civil Service Law”, informing her that she was “hereby placed on a temporary, involuntary leave of absence due to the exceptional circumstances described in the enclosed Attachment ‘A’ ”, and requiring her to appear for two separate medical examinations, before two different physicians, on dates set forth in the notice.
Attachment A recited the history of petitioner’s employment with TRS, including an incident in 1992 when petitioner submitted medical certifications to TRS stating that she could not perform certain allegedly work-related tasks, although a medical examination at that time found her to be fit to perform “the duties of her position.” The attachment went on to note that petitioner continued to discharge her duties after that time as a “problematic” employee, who “apparently did not like the work assigned to her even though it was within the scope of her duties.” In the attachment, petitioner is accused of recent *26 behavior during working hours which was “unprofessional if not irrational”, including “socializing at length, doing crossword puzzles, eating breakfast, even though she has been repeatedly warned not to engage in such misconduct.” The attachment concludes with the information that “[s]ince she refuses to take direction and in order to avoid confrontation, Ms. Barrett has been placed on a temporary involuntary leave”, and that medical examinations had been scheduled “to determine whether Ms. Barrett is physically and mentally fit to perform her position or merely malingering.” Despite the reference to petitioner’s refusal to stop her “misconduct”, no further mention of “insubordination”, nor possible disciplinary charges have ever been mentioned.[1]
Petitioner duly appeared for both examinations, one before cardiologist Dr. George Brief, and one before psychiatrist Dr. Azariah Eshkenazi. Dr. Brief provided respondents with a letter dated November 15, 1996, in which he offered his opinion that petitioner was not ready to return to her usual professional duties because:
1. Extremely high level of anxiety even while away from work.
2. Uncontrolled hypertension which may be related to her anxiety episode.
3. Consistent history of pain in her fingers while working on a word processor. Please note that this last opinion is based solely on the patient’s own history and is not backed up by any objective findings.
Dr. Eshkenazi, in a letter dated November 26, 1996, stated that petitioner did not suffer from any psychiatric condition or disability, and that she was capable of working, and functioning well “if she wants to.”
Based on Dr. Briefs letter, and the facts contained in the attachment, TRS determined to continue petitioner’s involuntary leave of absence, and informed petitioner of this fact in a letter dated December 12, 1996. Petitioner was informed that she could object to her leave by requesting a hearing, which would be scheduled within 30 days of receipt of her letter to Philip Bibla, department advocate. If she did not seek a hearing, she could ask to be reinstated, based on proof of her fitness to resume her duties, within one year after the date of the commencement of the leave of absence, or anytime thereafter prior to the termination of her employment.
*27 In a letter dated December 26, 1996, petitioner’s former attorney, Valerie Brathwaite Nelson, demanded petitioner’s reinstatement “with appropriate back pay.” Ms. Nelson also requested that Mr. Bibla telephone to discuss a date for a hearing, or other resolution of the matter. Ms. Nelson apparently received no response to this letter. In a further letter, dated January 15,1997, Ms. Nelson reiterated that petitioner “objects to the leave of absence on which she has been placed by the Agency”, and made a more direct request for a hearing. A hearing was scheduled by TRS for March 19, 1997, nearly two months after the request. The hearing was scheduled before an OATH Administrative Law Judge (ALJ), OATH being the tribunal charged with conducting adjudicatory hearings for City agencies, pursuant to New York City Charter § 1048.
The hearing was adjourned by the ALJ, apparently at the request of petitioner’s counsel. Petitioner then obtained new counsel and, eventually, a new hearing date of June 18, 1997 was scheduled. This date was adjourned to July 23, 1997, due to Mr. Bibla’s illness.
A prehearing/settlement conference was held on that date, during which petitioner presented TRS with medical certification indicating that petitioner’s hypertension was being treated, and was under control, and that petitioner was fit to perform the duties of her position. Based on these proofs, TRS apparently determined that petitioner was fit to resume her duties as an associate retirement benefits examiner. In a letter dated July 28, 1997, TRS instructed petitioner to return to work as of July 30, 1997, and informed her that “the emergency leave of absence pursuant to Section 72 of the Civil Service Law” would terminate at the start of that business day. A copy of this letter was forwarded to OATH. .
In a letter to Mr. Bibla dated July 29, 1997, petitioner’s new counsel, Leonard A. Shrier, advised TRS that petitioner, who had not yet received the letter informing her of her reinstatement, would be returning to work on August 4, 1997, instead of July 30, 1997. In this letter, Mr. Shrier requested that Mr. Bibla “advise me of the City’s position with regard to the back pay due Ms. Barrett for the period of her illegal suspension.” Although TRS did not respond to this letter, after its receipt, TRS wrote a letter to OATH on July 31, 1997, stating that, as a result of petitioner’s agreement to return to work, “any legal [proceeding] pursuant to [Civil Service Law § 72] that was filed with your office has been withdrawn.” A copy of this letter was forwarded to Mr. Shrier.
*28 According to respondents, petitioner offered no objection to the withdrawal of the proceeding. However, upon receipt of TRS’s letter informing the various parties of the withdrawal of the proceeding, Mr. Shrier, in a letter dated August 1, 1997, reminded OATH that the issue of petitioner’s right to be “made whole” by an award of back pay, as raised at the settlement conference, had not yet been addressed. In the letter, Mr. Shrier stressed that the matter of the legality of the involuntary leave, and petitioner’s right to back pay, should be resolved, and asked OATH to retain jurisdiction in order to address these matters.
II. The OATH Decision
On November 18, 1997, ALJ Raymond E. Kramer issued an 11-page memorandum decision, addressing the propriety of retaining jurisdiction over these issues, in light of the fact that the underlying proceeding had been withdrawn by TRS. After thorough review of the proceedings, the ALJ found that OATH could not retain jurisdiction over the issues of the propriety of the prehearing leave and back pay issues because (1) these issues were not squarely before OATH, but had only been raised “informally” by petitioner at the settlement conference; (2) TRS had a unilateral right to withdraw the proceeding, pursuant to OATH rules where there is a “final disposition” of the matter; (3) there had been a “final disposition” of the proceeding; (4) petitioner allegedly had not opposed the withdrawal of the section 72 proceeding; and (5) OATH had no authority to “retain” jurisdiction over a “subsidiary issue growing out of [a] proceeding regarding the propriety of the prehearing leave and to determine back pay issues” in a proceeding which had been withdrawn. In reaching this determination, the ALJ noted that petitioner allegedly had never requested “expedited treatment” of her request for a hearing, that Civil Service Law § 72 (5) appears to contemplate “that a hearing on the underlying issue of fitness will be conducted in relatively short order, that the outcome of the hearing on the underlying issue of fitness will be conducted in relatively short order,” and that the amount of time which petitioner spent on prehearing leave was “an inordinate amount of time in the absence of any delay caused by [petitioner].” The ALJ did remark that while case law (specifically, Matter of Lamb v New York State Off. of Mental Health, 162 AD2d 758 [3d Dept 1990]) suggested that petitioner had a right to a hearing on the question of whether the prehearing leave was proper in the first instance, “she must seek *29 her remedies elsewhere.” The ALJ did not suggest where that elsewhere might be.
III. The Article 78 Petition
In the present proceeding, petitioner seeks (1) a declaration that TRS’s decision not to restore petitioner’s back pay and leave credits for the period of her allegedly “illegal” emergency involuntary leave was arbitrary and capricious, and in violation of petitioner’s due process rights; (2) a declaration that OATH’s determination that it had no jurisdiction to address the propriety of the emergency involuntary leave, or to award petitioner back pay and leave credits, was arbitrary and capricious and in violation of law; and (3) an order compelling TRS to restore petitioner’s back pay and leave credits, or, in the alternative, an order compelling OATH to conduct a hearing to determine whether TRS violated petitioner’s rights in placing her on emergency involuntary leave, and to determine the amount of back pay and leave credits to which petitioner is entitled.
Respondents, in their answer, argue that the present proceeding is time barred, but that, in any event, respondents’ actions were at all times rationally based, and so, beyond this court’s review.
IV. Discussion
A. Statute of Limitations
Proceedings brought pursuant to CPLR article 78 are to be brought within “four months after the determination to be reviewed becomes final and binding upon the petitioner” (CPLR 217 [1]). The present proceeding is timely, as it was commenced within four months of the withdrawal of the hearing by TRS, and OATH’s determination not to retain jurisdiction to hear the matters which petitioner claims should have been addressed.
Respondents insist that petitioner was obligated to bring this proceeding within four months of respondents’ failure to provide a hearing date within 30 days of January 15, 1996, the date upon which petitioner’s attorney wrote requesting a hearing, since, allegedly, that is the point at which petitioner became “aggrieved” by the actions of respondents. (See, Matter of Lubin v Board of Educ., 60 NY2d 974, 976 [1983], cert denied 469 US 823 [1984] [an administrative determination becomes binding upon a petitioner when the petitioner” is “aggrieved” by *30 it].) This argument is without merit. Civil Service Law § 72 (1) states that “[t]he appointing authority will afford the employee a hearing within thirty days of the date of a request [for a hearing] by the employee”. It does not state that a petitioner who decides to waive this provision, and accept a later date, as petitioner did, then loses the right to bring a proceeding objecting to any aspect of the later proceedings which occurs more than four months after she first was entitled to a hearing date. Petitioner is not objecting to OATH’s failure to schedule a hearing within 30 days of her request, and this court would never countenance the absurd result which respondents suggest; that petitioner’s right to object to the outcome of her hearing expired before the occurrence of the events of which she now complains.
B. Merits of Petition
A determination of an administrative agency will not be disturbed if it is rationally based. (Matter of Pell v Board of Educ., 34 NY2d 222 [1974].) Further, “the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld.” (Matter of Howard v Wyman, 28 NY2d 434, 438 [1971].)
Petitioner’s involuntary leave was commenced under Civil Service Law § 72 (5), which states “Notwithstanding any other provisions of this section, if the appointing authority determines that there is probable cause to believe that the continued presence of the employee on the job represents a potential danger to persons or property or would severely interfere with operations, it may place such employee on involuntary leave of absence immediately; provided, however that the employee shall be entitled to draw all accumulated unused sick leave, vacation, overtime and other time allowances standing to his or her credit. If such an employee is finally determined not to be physically or mentally unfit to perform the duties of his or her position, he or she shall be restored to his or her position and shall have any leave credits or salary that he or she may have lost because of such involuntary leave of absence restored to him or her less any compensation he or she may have earned in other employment or occupation and any unemployment benefits he or she may have received during such period.” Petitioner’s due process right to the protections created by this section are well documented. (See, Laurido v Simon, 489 F Supp 1169 [SD NY 1980]; Snead v Department of Social Servs., 351 F Supp 1360 [SD NY 1972].) These “significant due process implications” require strict compliance with the statute’s *31 procedural requirements. (Matter of Breen v Gunn, 137 AD2d 685 [2d Dept 1988].)
Although petitioner asks as part of the present proceeding that this court make a determination in petitioner’s favor concerning the propriety of the emergency leave upon which she was placed, it is just this question which is to be resolved at the hearing contemplated in section 72. (See, Matter of Lamb v New York State Off. of Mental Health, 162 AD2d 758, supra.) In Lamb, as in the present case, an employee was placed on emergency leave pursuant to Civil Service Law § 72 (5) due, allegedly, to his unusual behavior. He requested a hearing. However, before the scheduled hearing was held, the employee was found to have improved, and was returned to work. His request for the restoration of leave credits and back pay was denied by the agency, based on the fact that there had been no final determination that petitioner had been placed on leave erroneously.
The Appellate Division, Third Department, in Lamb (supra) ruled that a “final determination” under Civil Service Law § 72 (5) means a final determination of the propriety of the emergency leave of absence, not a determination that there has been an improvement in the employee’s condition, allowing him to return to work. The Lamb Court found that the propriety of the petitioner’s involuntary leave had not been “finally determined” (at 759), as envisioned by the statute, but that the matter still required a hearing, regardless of the petitioner’s return to work. Consequently, the Appellate Division found that it was improper for the Supreme Court to have determined the issue of the petitioner’s right to back pay and leave credits, and remanded the matter to the agency for further proceedings.
In the present matter, the OATH ALJ cited Matter of Lamb v New York State Off. of Mental Health (supra) as authority for the proposition that TRS’s action in restoring petitioner to her job did not amount to a finding as to the propriety of the leave, nor automatically qualify her to receive back pay and leave credits, and that a hearing was required to resolve these issues. It still declined to hear the matters, because of TRS’s perceived unilateral right to withdraw the hearing, petitioner’s alleged acquiescence in the withdrawal, the fact that the hearing was, allegedly, no longer extant, and that, allegedly, the unresolved issues had not been placed “squarely” before OATH in the proceeding.
Clearly, this court may not decide the issues of the propriety of the petitioner’s involuntary leave, or whether she is entitled
*32 to back pay and leave credits. (See, Matter of Lamb v New York State Off. of Mental Health, supra.) And, as OATH’s ALJ noted, petitioner is certainly entitled to a hearing on these issues. This court, however, finds that the proper forum for the hearing is OATH, and that OATH erred in failing to recognize its jurisdiction to hear the matters.
OATH seems to have perceived a difference between a section 72 (5) hearing which takes place very shortly after the commencement of an involuntary emergency leave, as the statute clearly contemplates, and the present, unusual, circumstance, in which the placement on involuntary leave and the final restoration to employment are separated by a considerable period of time. In the first instance, a determination that an employee is presently fit to return to work essentially resolves the question of the propriety of the roughly contemporaneous placement of the employee on involuntary leave, while in the second, the possibility exists that a perceived improvement in the employee’s condition as a result of the passage of time, or the receipt of treatment, will justify restoring the employee to his or her position, regardless of the propriety of the initial involuntary leave. As the OATH ALJ noted, in the second case, the restoration of the employee to his post does not necessarily equate to a finding that the placement of the employee on involuntary leave was improper. However, the ALJ seems to have taken the difference a step further, by deciding that the passage of time rendered the questions of the initial propriety of the leave, and the right to be made whole contemplated by Civil Service Law § 72 (5), “subsidiary” to the proceeding which respondents had withdrawn, rather than integral to it.
Several of the ALJ’s findings are problematic. First, the ALJ finds that petitioner never asked for an “expedited” hearing, when the hearing, by statutory mandate, is expected to be held in an expedited manner, and OATH itself, in its written confirmation of the hearing date, rated the matter “high” in priority. Second, the ALJ (along with respondents) finds it significant that petitioner never raised the matter of her right to a hearing on the issue of the restoration of back pay and leave credits until the settlement conference, when a resolution of these matters is basic to the due process rights contained in Civil Service Law § 72 (5), and, in any event, the documentary evidence indicates that this matter was raised by petitioner’s attorney from the onset of her involuntary leave. (See, e.g., Letters of Valerie Brathwaite Nelson, Dec. 26, 1996, Jan. 15,
*33 3 1996.) Thus, despite the ALJ’s findings, the matter was always inherent in the section 72 (5) hearing, and was not somehow “subsidiary” to it.[2]
More disturbing is the ALJ’s conclusions that TRS’s decision to return petitioner to work was a “final disposition” of the entire matter under OATH rule (48 RCNY) 1-32 (f), allowing TRS to unilaterally withdraw the hearing, and that petitioner did not object to the withdrawal of the hearing. On the contrary, the August 1, 1997 letter from petitioner’s attorney, sent to OATH immediately following receipt of the news of the withdrawal of the hearing, indicates only acquiescence in the petitioner’s restoration to her position; the letter expressly and emphatically sets forth petitioner’s objection to any conclusion of OATH’s jurisdiction which did not include resolution of the matters of the propriety of the involuntary leave, or petitioner’s right to back pay and leave credits.
48 RCNY 1-32 (f) states that “[w]ithdrawal of a case from the calendar by the petitioner[3] shall not be subject to the ‘good cause’ requirement of subdivision (b) of this section [pertaining to adjournments]. However, such withdrawal, other than pursuant to settlement agreement or other final disposition of the case, shall be permitted only upon application to the administrative law judge, who may grant or deny the application, either in full or upon stated terms and conditions.”
This court finds that OATH’s determination that TRS had a unilateral right to withdraw the hearing was, under the *34 circumstances, irrational, in that petitioner’s restoration to her position by TRS had not “finally disposed” of all of the issues necessarily raised by the institution of the hearing, and had, in fact, failed to resolve issues crucial to the proceeding. OATH erred in allowing an interim determination by petitioner’s employer that she was presently fit, or had recovered sufficiently to resume her position, to erase petitioner’s due process right to be restored fully to her position upon a finding that the involuntary leave was improper. By granting TRS this unilateral right, OATH unwittingly created a disturbing scenario, whereby an agency, tired of dealing with a “problematic” employee, could decide to rid itself of the nuisance for some period of time and, perhaps, teach the employee a lesson, by placing that person on involuntary leave without pay, allowing the process to wend its way through the system towards a hearing, and then withdrawing the hearing, and reinstating the chastened employee, minus lost back pay and leave credits, at the point where the employee presents his or her case for reinstatement at the prehearing conference. Such a result cannot be intended by Civil Service Law § 72 (5), and will not be countenanced here. OATH should either have rebuffed TRS’s request to withdraw the hearing, based on the existence of unresolved issues, or have retained jurisdiction to hear the issues which remained after the reinstatement of petitioner, since petitioner’s reinstatement did not “finally dispose” of the question of petitioner’s right to back pay and leave credits.
Accordingly, it is ordered and adjudged that the petition is granted to the extent that the matters of the propriety of the petitioner’s involuntary leave, and her right to back pay and leave credits under Civil Service Law § 72 (5), is remanded to respondent OATH for determination forthwith, and the petition is otherwise denied.

. Suspensions stemming from disciplinary charges are covered under Civil Service Law § 75, not § 72.

. The ALJ, in his decision, cited three OATH cases for the proposition that OATH has “generally declined to rule on the propriety of prehearing leaves under Civil Service Law section 72 or similar prehearing disciplinary suspensions under section 75, and the back pay issues which arise from them.” The cases are inapposite. In Matter of Human Resources Admin, v Dipple (OATH index No. 1142/94, July 28, 1994), the OATH ALJ declined to address the propriety of an employee’s involuntary suspension on disciplinary charges because it was finally determined by the ALJ that the employee was guilty as charged. In Matter of Human Resources Admin, v Estevez (OATH index No. 1085/94, Dec. 14, 1994), the OATH ALJ declined to hold a separate hearing on the question of the appropriateness of the emergency involuntary leave, preliminary to the section 72 due process hearing. However, the ALJ then recommended that the employee in question be reinstated with full salary and leave credits. In Matter of Human Resources Admin, v Angus (OATH index No. 249/93, Dec. 7, 1992, affd NY City Civ Serv Commn, item No. C94-72-4, Oct. 28, 1994), the OATH ALJ, after a discussion of the employee’s psychiatric and employment history, recommended that the employee be placed on disability leave pursuant to section 72. The issue of the employee’s right to back pay or leave credits was not addressed.

. It should be noted that the petitioner herein was the respondent in the administrative proceeding, which was instituted by TRS.