[958 NE2d 1197, 935 NYS2d 281]

In the Matter of THOMAS SHEERAN, Appellant, v NEW YORK STATE DEPARTMENT OF TRANSPORTATION et al., Respondents.

In the Matter of MICHELLE BIRNBAUM, Appellant, v NEW YORK STATE DEPARTMENT OF LABOR et al., Respondents.

Argued October 13, 2011; decided November 17, 2011

**POINTS OF COUNSEL**

*Rita J. Verga*, Albany, and *William P. Seamon* for appellant in the first and second above-entitled actions. I. The Appellate Division committed error of law in interpreting Civil Service Law § 72. (*Matter of Cooperman v Commissioner, Dept. of Correctional Servs. of State of N.Y.*, 86 Misc 2d 610; *Fuentes v Shevin*, 407 US 67.) II. The Appellate Division's interpretation deprives state employees of constitutionally required due process. (*Matter of Moses v Rensselaer County*, 262 AD2d 697; *Laurido v Simon*, 489 F Supp 1169; *Fuentes v Shevin*, 407 US 67; *Matter of Cooperman v Commissioner, Dept. of Correctional Servs. of State of N.Y.*, 86 Misc 2d 610, 57 AD2d 989; *Goldberg v Kelly*, 397 US 254; *Matter of Pastore v City of Troy*, 126 Misc 2d 113.)

*Eric T. Schneiderman, Attorney General*, Albany (*Julie M. Sheridan, Barbara D. Underwood* and *Andrea Oser* of counsel), for respondents in the first and second above-entitled actions. The plain language and legislative history of Civil Service Law § 72 establish that it does not apply to an employee seeking to return to work from voluntary sick leave. II. The procedures of 4 NYCRR 21.3 (e), article 30 of the collective bargaining agreement, CPLR article 78, and Civil Service Law § 73 provided petitioners with all the process due, and the doctrine of constitutional avoidance is therefore not implicated. (*Matter of Hurwitz v Perales*, 81 NY2d 182; *Mathews v Eldridge*, 424 US 319; *Matter of Prue v Hunt*, 78 NY2d 364; *Cafeteria & Restaurant Workers v McElroy*, 367 US 886; *Morrissey v Brewer*, 408 US 471; *Cleveland Bd. of Ed. v Loudermill*, 470 US 532; *Gilbert v Homar*, 520 US 924; *FDIC v Mallen*, 486 US 230; *Logan v Zimmerman Brush Co.*, 455 US 422; *Board of Regents of State Colleges v Roth*, 408 US 564.)

### OPINION OF THE COURT

Pigott, J.

The issue presented on both of these appeals is whether Civil Service Law § 72, which provides certain procedural safeguards to a public employee when placed on an involuntary leave of absence, applies to employees who are prevented from returning to work following a voluntary absence. We hold that it does.

I

Petitioner Thomas Sheeran was a civil engineer in the New York State Department of Transportation (DOT); petitioner Michelle Birnbaum was employed by the New York State Department of Labor (DOL). Both petitioners took voluntary leave due to illness and eventually sought to return to work. Each submitted the necessary certification from a treating physician attesting that he or she was fit to return to duty. DOT and DOL exercised their right pursuant to 4 NYCRR 21.3 (e) to have petitioners medically examined by a State-affiliated physician prior to returning to work. In each case, the physician found the petitioner unfit to return to duty. As a result, petitioners were placed on involuntary leave. Petitioners sought a hearing pursuant to Civil Service Law § 72. The employers denied the requests, asserting that the provisions of 4 NYCRR 21.3 and article 30 of the collective bargaining agreement (CBA) between the union and the employers were applicable to them and that

section 72 was not, as it only applied to employees being removed from the work site. Petitioners were eventually terminated from employment pursuant to Civil Service Law § 73, which permits an employer to terminate employment when the employee is continuously absent from work for one year and unable to perform the duties of the position.

## II

Petitioners brought these CPLR article 78 proceedings, to challenge, among other things, their placement on involuntary leave without having been provided a hearing pursuant to Civil Service Law § 72.

In separate decisions, Supreme Court granted the petitions, to the extent of annulling the determinations of DOL and DOT that denied a section 72 hearing and remanded the matters to the employers for compliance with the statute. The Appellate Division reversed and dismissed the petitions (*see Matter of Sheeran v New York State Dept. of Transp.*, 68 AD3d 1199 [3d Dept 2009]; *Matter of Birnbaum v New York State Dept. of Labor*, 75 AD3d 707 [3d Dept 2010]). The appellate court reasoned that section 72, by its plain language, applies only to employees placed on involuntary leave, whereas the CBA and 4 NYCRR 21.3 apply to employees who have taken voluntary leave (*Sheeran*, 68 AD3d at 1203). Thus, the court concluded, the determinations of the DOT and DOL to place each of the petitioners on an involuntary leave of absence without a hearing under section 72 was "not arbitrary, capricious, irrational or contrary to law" (*id.*).

## III

Civil Service Law § 72 (1) provides that when an employer determines that "an employee is unable to perform the duties of his or her position by reason of a disability," the employer may require the employee to undergo a medical examination. If, after such examination, the employee is found unfit to perform the duties of the job, the employee may be placed on an involuntary leave of absence (*id.*). The statute requires that the employer provide the employee with written notice. The employee may, within certain time limits, object to the proposed leave and request a hearing (*id.*). It further provides that in the event that the employee requests a hearing, imposition of the proposed leave of absence is held in abeyance pending final determination, unless the employee's continued presence on the job creates a potential danger (*see* § 72 [5]).

Starting with the language of the statute, we find no indication that the Legislature intended to make a distinction between an employee who is placed on involuntary sick leave from the job site and one that is placed on such leave from a voluntary absence. The statute simply provides that an employee "placed on leave of absence" is entitled to its procedural protections. DOL and DOT contend that the statute's repeated reference to the involuntary leave as a *"proposed"* leave of absence, as well as the language requiring notice of the *"proposed* date on which such leave is to *commence"* assume that the employee is currently working. Those terms, however, simply refer to the prospective nature of the involuntary leave and nothing more.

Subdivision (5) of the statute, which permits the employer to immediately place the employee on involuntary leave when the employee poses potential danger to the work site, applies equally whether the employee is actively working or about to return. In both situations, the statute allows the employer to protect the workplace. While DOT and DOL point to rule 21.3 (e) and article 30 of the CBA as applying to the petitioners' circumstances, neither of those provisions affords an immediate opportunity to be heard once a determination is made to place the employee on involuntary leave status. They provide an opportunity to be reexamined at a later date, and as such do not provide the procedural protections of section 72.

## IV

The legislative history of the statute is in full accord with this interpretation. A Department of Civil Service memorandum in support of this legislation noted: "One of the most knotty personnel problems which plagues department and agency heads is the problem of what to do about an employee who has been absent and disabled from the performance of his duties for a prolonged period of time" (Mem of State Dept of Civil Serv, Bill Jacket, L 1983, ch 561, reprinted in 1983 McKinney's Session Laws of NY, at 2597, 2598). Notably, there is no distinction made between an employee who has been placed on involuntary leave from a voluntary one and one forced to take an involuntary leave.

The history also reveals that the statute has a remedial purpose: to afford tenured civil servant employees with procedural protections prior to involuntary separation from service. Such remedial purpose applies equally here, where an employee is out on sick leave and then seeks to return to work, but

is prohibited based on a finding that he or she is unfit. To read the statute otherwise would discourage employees from taking voluntary leave, since they would have greater rights if they remained on the job and waited to be involuntarily removed—a result the Legislature surely did not intend.

Accordingly, in both appeals, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court, Albany County, reinstated.

SMITH, J. (dissenting). The majority errs, I think, by giving an overbroad interpretation to a statute that is itself broader than it needs to be. A brief description of how the statute came to exist in its present form may help make this point clear.

As first enacted in 1969, Civil Service Law § 72 authorized a public employer to place an employee on medical leave of absence, and made no provision for a hearing of any kind (L 1969, ch 225). Two federal district court decisions held that the original version of the statute deprived employees of their rights to due process (*Snead v Department of Social Servs. of City of N.Y.*, 355 F Supp 764 [SD NY 1973]; *Laurido v Simon*, 489 F Supp 1169 [SD NY 1980]). Accordingly, in 1983, the statute was amended to provide affected employees with quite elaborate procedural protections: a written statement of the reasons for a leave of absence, and an opportunity for a hearing before an independent hearing officer, at which the "[t]he employee may be represented . . . by counsel or a representative of a certified or recognized employee organization and may present medical experts and other witnesses or evidence" (Civil Service Law § 72 [1]). The employee is entitled to a transcript of the hearing without charge (*id.*), and may appeal the hearing officer's determination to a state or municipal civil service commission—a determination itself reviewable under CPLR article 78 (Civil Service Law § 72 [3]). These protections were evidently thought necessary to comply with the United States Constitution; the memorandum submitted by the Department of Civil Service in support of the 1983 legislation cites the *Snead* and *Laurido* cases and says: "we are proposing that the safeguards . . . be added to Section 72 in order to cure any procedural due process defects which may be present" (Mem of State Dept of Civil Serv, Bill Jacket, L 1983, ch 561, at 7, reprinted in 1983 McKinney's Session Laws of NY, at 2597, 2598).

But the belief that all this procedure was required by the Constitution proved to be mistaken. In 1985, the United States

Supreme Court decided that a public employee facing termination—a more serious consequence than an involuntary leave of absence—was entitled to "some form of pretermination hearing," but that the hearing "need not be elaborate" (*Cleveland Bd. of Ed. v Loudermill*, 470 US 532, 542, 545 [1985]). Under *Loudermill*, such an employee is entitled only "to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story"—not to an evidentiary hearing before an independent factfinder (*id.* at 546). In New York, under our decision in *Matter of Prue v Hunt* (78 NY2d 364, 369 [1991]), a public employee terminated under Civil Service Law § 73 after a year's absence due to disability is not entitled to any "procedural formality greater than that required in *Loudermill*" prior to termination. The result is an anomaly: an employee who is fired under section 73 for inability to perform the duties of his or her position gets less protection than an employee placed on leave of absence for the same reason under section 72.

Today's decision magnifies the anomaly, extending section 72 rights to employees who are not removed from the workplace by their employer, but who have removed themselves and are seeking to return. Such an extension of section 72's protections is not compelled either by the Constitution or by common sense, and is not commanded, or even suggested, by the text of section 72.

On the contrary, section 72 was evidently written to be applicable to employees who are at work until their employer chooses to remove them. The opening words of section 72 (1) are: "When in the judgment of an appointing authority an employee is unable to perform the duties of his or her position." How is an employer to make such a "judgment" about an employee who is not at the workplace, and whom the employer has no opportunity to observe? And how is the employer to provide to the employee "[w]ritten notice of the facts providing the basis for [the employer's] judgment" prior to any medical examination, as section 72 (1) requires? The statute then says that the employer may, based upon the results of a medical examination, tell the employee "that he or she may be placed on leave of absence"—not that a leave of absence voluntarily begun shall continue. The statute goes on to refer to "the proposed leave and the proposed date on which such leave is to commence," to give the employee an opportunity "to object to the imposition of the proposed leave of absence" and to provide that "imposition of the proposed leave of absence shall be held in abeyance until

a final determination." This last phrase is particularly telling: to say that the "imposition of the proposed leave of absence shall be held in abeyance" is a very strange way to describe bringing back to work an employee who has already been on leave of absence for some time.

There is no unfairness in not providing to an employee already on voluntary leave the same procedural protections given to one whom the employer wants to remove. It is entirely reasonable to require more extensive procedures to change the status quo than to continue it. It is also reasonable to think that an employee who has voluntarily withdrawn from work for medical reasons is more likely to be disabled than one who has not. In short, nothing justifies reading Civil Service Law § 72 to be applicable to cases like this.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and JONES concur with Judge PIGOTT; Judge SMITH dissents and votes to affirm in a separate opinion.

In each case: Order reversed, etc.