Adele GRAHAM et ano., etc., Plaintiffs,

v.

STATE OF NEW YORK, DEPARTMENT OF CIVIL SERVICE, et al., Defendants.

No. 84 Civ. 4546 (WCC).

United States District Court, S.D. New York.

July 20, 1987.

---

**22.** *See id.,* at 909.

**27.** *Id.* at 343, 103 S.Ct. at 1119.

James I. Meyerson, New York City, for plaintiffs.

Adele Graham, Santa Fe, N.M., pro se.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for defendants; Judith T. Kramer, Jan P. Ryan, Asst. Attys. Gen., of counsel.

## WILLIAM C. CONNER, District Judge:

Defendant State of New York has moved pursuant to rule 3(j) of the Local Civil Rules for reargument of this Court's Opinion and Order dated February 17, 1987, 653 F.Supp. 1363, familiarity with which is presumed. After carefully considering the papers submitted by the parties, I conclude that there is no reason to change my original decision. Accordingly, for the reasons set forth below, defendant's motion is denied.

Defendant claims that the Court was in error in holding that the Supreme Court decision of *City of Los Angeles v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), put the State on notice that their use of sex-based actuarial tables violated title VII, since the New York system treated male and female retirees differently at the payout stage rather than at pay-in as prohibited in *Manhart*. Defendant claims the New York system is an instance of equal contributions producing unequal results, since sick leave accrued in the same fashion for women as it did for men. This, the State argues, was not found to violate title VII until *Arizona*

*Governing Committee for Tax Deferred Annuity & Deferred Compensation Plans v. Norris*, 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983) (per curiam). The State notes that it subsequently calculated credits using a unisex table.

As I pointed out in my Opinion, it is not clear that the New York system requires equal contributions, as the State claims. One might argue that the State, in converting accrued-but-unused sick leave into a credit against health insurance premiums, required a woman to "contribute" more unused sick days than a similarly situated man in order to receive the same credit.

Nevertheless, even if the system is viewed as one requiring equal contributions but giving smaller benefits to women, the Supreme Court made it clear in *Norris* that this was no basis for distinguishing *Manhart*. As I have said before, nearly every lower federal court that has considered sex-based plans that discriminate either at the "pay-in" or "payout" stage has rejected the suggestion that the two alternatives are somehow different. *See, Spirt v. Teachers Insurance & Annuity Ass'n*, 691 F.2d 1054 (2d Cir.1982) (*Spirt II*), *vacated and remanded*, 463 U.S. 1223, 103 S.Ct. 3566, 77 L.Ed.2d 1406 (1983), *decision on remand*, 735 F.2d 23 (2d Cir.1984) (*Spirt II*), *cert. denied*, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984). It is clear that the State should have recognized that its practice, whether viewed as discriminating in the calculation of contributions required or in the calculation of benefits paid, was impermissible when *Manhart* was decided. Accordingly, this Court did not err in finding that *Manhart* put New York on notice that their use of sex-based tables to calculate insurance premium credits was in violation of title VII.

Defendant also objects to the Court's award of retroactive relief, arguing that although *Norris* held that the use of sex-based tables was no more permissible to claculate payout than it was to calculate contributions, the Supreme Court in that case declined to award retroactive relief in light of the "question left open in *Manhart*," 463 U.S. at 1107, 103 S.Ct. at 3511, and the large burden a retroactive award would place on public treasuries.

As outlined above, although *Manhart* left certain issues open, it is clear that the system used by New York did not involve "questions left open" by the *Manhart* decision. The State has made much of the cost of retroactive relief and argues that it would constitute an unreasonable burden on the public, in spite of the presumption in favor of retroactive relief in title VII cases. *See, Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). *Manhart* and *Norris* do not purport to do away with that presumption in cases involving a pension or retirement plan.

The Second Circuit reaffirmed its decision to award retroactive relief in *Spirt II* after the Supreme Court had vacated the court's previous decision for reconsideration in light of *Norris*. As analyzed in *Spirt II*, the entire thrust of Justice Powell's discussion on relief in *Norris* "focuses on the burdens that retroactivity would impose- upon the employer or the plan." *Spirt II*, at 27. Essentially, the Supreme Court was concerned that an award of retroactive relief in *Norris* would require disbursing greater benefits than the collected contributions could support, jeopardizing the solvency of the entire pension fund. Retroactive relief was not awarded in *Manhart* or in *Norris* because to do so would impose an onerous financial burden on the employer or the plan and ultimately put every employee's retirement benefits at risk. *See, Norris*, 103 S.Ct. at 3512 (O'Connor, J., concurring).

We do not have that problem here. The State has submitted an Affidavit from Thomas McCracken outlining the expense the State would bear if an award of retroactive relief is made. The actual cost of retroactively changing future monthly credits depends upon the rate of terminations, elective changes in coverage, and increases in premiums, which result in greater use of available credits. (McCracken Affidavit ¶ 6) McCracken's estimates assume (1) a percentage increase in monthly credits of 18%, using unisex tables for future credits; (2) a constant rate of retirements from January 1, 1979 through July 31, 1983; (3) that the increase in use of available credits as premiums rise and

changes in coverage will cancel each other out; (4) the assumptions will remain valid through 1990. (McCracken Affidavit ¶ 7). The State's total monthly contribution for the 10,366 female employees who retired between January 1, 1979 and July 31, 1983 is $21,769.96. An increase of 18% in this amount would cost the State only $3,919 a month, or approximately $47,000 a year. The added cost would be proportionately reduced if, in any case, the increase would bring the amount of monthly credit to an amount greater than the portion of the premium due from the retiree. (McCracken Affidavit ¶¶ 8, 9).

This burden on the New York State Treasury is several orders of magnitude less than that which would have been imposed upon the Treasury of Arizona in *Norris*. In that case, if the Supreme Court had awarded retroactive relief, Arizona would have been forced to pay from $817 million to $1.26 billion annually for 15 to 20 years. Here, the estimated total cost of the retroactive award through 1990 is roughly half a million dollars. (McCracken Affidavit, Table II).

Finally, New York argues that the calculation of future credits for retirees during the period at issue cannot be done using a unisex table because to do so would reduce male benefits calculated upon retirement pursuant to N.Y.S. Civil Service Law, section 167. Although this calculation is made and transmitted to the individual retirees, it is not set in stone. As New York points out, the amount of monthly credit and the amount each retiree is expected to contribute toward the insurance premiums is subject to fluctuation for a number of reasons. (*See*, McCracken Affidavit, ¶ 6)

For the reasons set forth above, defendant has not persuaded me that there is any reason to reconsider the Court's Opinion and Order of February 17, 1987. Accordingly, defendant's motion to reargue is denied.

SO ORDERED.