Jose VENTURA, on behalf of himself and on behalf of all others similarly situated, Plaintiffs,

v.

NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, a municipal entity, Woodhull Hospital, a hospital facility within and part of the New York City Health and Hospitals Corporation, Doctor Benker, Chief/Head of Employee Health Services Unit of the Woodhull Hospital, Carlos Loran, Administrator of the Woodhull Hospital Facility, Doctor Jo Ivey Bofford, Chief Operating/Executive Officer of the New York City Health and Hospitals Corporation, Defendants.

No. 88 Civ. 0334 (JMW).

United States District Court, S.D. New York.

Jan. 11, 1989.

James I. Meyerson, New York City, for plaintiffs.

Peter L. Zimroth (Isaac Klepfish, and Ronald P. Younkins, Corp. Counsel, of counsel), New York City, for defendants.

## MEMORANDUM & ORDER

WALKER, District Judge:

Plaintiff, Jose Ventura, has brought this action pursuant to 42 U.S.C. §§ 1981 and 1983, as well the Fourth and Fourteenth Amendments to the United States Constitution, claiming that defendants violated his civil rights by failing to enforce proper policies in conducting drug testing of all employees. Plaintiff has moved pursuant to Rule 23(b)(2) of the Fed.R.Civ.P. for an order certifying the action as a class action on the grounds that defendants have acted on grounds generally applicable to the class, making final injunctive relief appropriate. For the reasons stated below, this Court conditionally grants plaintiff's motion.

### I. *Background*

The majority of papers submitted in connection with this motion are confused and, frequently, internally inconsistent. Apparently, the parties have attempted to compensate for the deficiencies in their original

memoranda in support and in opposition to this motion by submitting numerous, repetitive affidavits and exhibits.[1] Nowhere, however, has either party advanced a unified, coherent statement of its case. Nevertheless, from this morass, the Court has been able to discern the following facts.

A. *Hospital Policies*

The rules and regulations of the New York State Commissioner of Health authorize hospitals to conduct pre-employment health tests, including tests for alcohol and drug use. The New York State Public Health Law provides:

> The hospital shall provide, at no expense to the employee, an examination of the prospective employee's health status prior to the beginning of employment, which examination shall be of sufficient scope to ensure that no person shall be employed unless he/she is free from a health impairment which is of potential risk to the patient or which might interfere with the performance of his/her duties, including the habituation or addiction to depressants, stimulants, narcotics, alcohol or other drugs or substances which may alter the employee's behavior.

10(c) N.Y.C.R.R. § 405.21(c) adopted pursuant to Article 28 of the New York State Public Health Law.

In April 1984, the New York City Health and Hospitals Corporation ("HHC"), pursuant to this regulation, adopted a pre-employment health assessment policy for all new employees. This assessment included a review of employees' possible habituation or addiction to drugs. John Lewis Brown, an attorney with HHC, has testified that it is up to each hospital faculty administrator, within the system, to determine whether the drug testing policy will be applied to all newly hired employees, or to only certain employees. Brown Dep. at 12.

Woodhull Hospital ("Hospital"), a hospital within and part of HCC, formally initiated this program in February, 1987. In connection with its drug testing program, the Hospital has required employees to sign one of two consent forms: the "old" form and its purported replacement, the "new" form. The "old form" provided that as a condition of employment an employee must consent to undergo testing as required by the New York State and City Health Codes, and did not include drug testing among its listing of the various tests that may be performed as a condition of employment. Plaintiff's Exhibit G. The "new form" specifically advises prospective employees that, as a condition of their employment, they are to be screened for the use of "depressants, stimulants, narcotics, alcohol or other substances." Plaintiff's Exhibit E.

The Hospital contends that it adopted the new form in February, 1987, and that thereafter the new consent forms were given uniformly to all tested employees. Mooney Dep. at 6–7. However, there is evidence to the contrary. Nurse Sylvia Hibbert, who worked in Employee Health Services at the Hospital until October, 1987, testified at deposition that the old form was used routinely until she left the Hospital—eight months after the adoption of the new forms. In addition, Nurse Hibbert stated that while she was employed at the Hospital, she had never seen the new form. Hibbert Dep. at 14–15.

B. *Plaintiff's Testings*

Plaintiff, a male of Hispanic national origin, was hired by the Hospital as a physician's assistant on August 17, 1987. As a condition of his employment, plaintiff was provided with, required to sign, and signed the old form which did not notify him that he would be tested for drugs. Plaintiff gave blood and urine samples on August 17, 1987, and made an appointment for a physical exam which was set for September 2, 1987. On September 2, defendant Doctor Benker, director of the Employees Health Services Unit, conducted plaintiff's physical examination. Plaintiff was told,

---

**1.** The Court expects that future papers submitted by counsel in this case will more accurately reflect the quality of work that counsel are capable of performing on behalf of their clients.

however, that the previous urine sample was incomplete and was required to submit a new sample. Plaintiff voluntarily complied with this request. Benker Dep. at 43.

On November 12, 1987, plaintiff visited the Employee Health Services Unit for a flu vaccination and for his first of three hepatitis shots. He accidentally came across his medical file and noticed that he had been tested for drugs. Although his results were negative, plaintiff objected to the drug testing without his prior consent and instituted this action. Plaintiff claims that "the fact of the taking of the test was extremely distressing and the fact that it remained in his records [is] potentially devastating to his career opportunities." Complaint at ¶ 39.

## C. *Summary of Parties' Claims*

Plaintiff alleges that: (1) his drug testing, as well as that of others, was done on a selective basis, and that the basis for the selective testing was grounded in race and/or national origin considerations; (2) his drug testing, as well as that of others, was without prior consent or notification; (3) the hospital has not implemented standards to secure the integrity of analyses done with respect to the presence or absence of drugs. Complaint ¶¶ 35, 41–43. Plaintiff's proposed class comprises all employees of any facility of HHC, from 1984 to the present, who have been subjected to drug testing without their consent. Affirmation of James I. Meyerson, ¶ 26.

Defendants deny that drug testing is conducted selectively based upon the race or national origin of the tested employee. Moreover, defendants claim that all employees are required to sign the new form that specifically notifies them that they will be tested for drugs as a condition of their employment. While plaintiff accidentally was given the old form that does not mention drug testing, defendants claim that all other tested employees have been given new forms. Thus, defendants argue that class certification should be denied because: (a) plaintiff's claim is not typical of the class, and (b) class certification is inap-

propriate when the primary relief sought is monetary damages.

## II. *Discussion*

### A. *Rule 23(a)*

The prerequisites to a class action are set forth in F.R.Civ.P. 23(a) as follows:

> One or more class members may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

 The dismissal of a motion for class certification is justified only by a clear showing to that effect and after a proper appraisal of the factors enumerated on the face of the rule itself. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 561 (2d Cir.1968), *vacated and remanded on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). When considering whether to certify a class, the court should take the allegations of the merits of the case, as set forth in the complaint, to be true. *Id.* The party who seeks to utilize Rule 23 has the burden of establishing that the prerequisites of that rule are satisfied. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1970). The Court finds each of the four requirements for a class action is satisfied in this case.

### 1. *Numerosity*

 The numerosity element requires that class number be so numerous that joinder is impracticable. This does not mean that joinder must be impossible; rather, "the court must find that the difficulty or inconvenience of joining all members makes class litigation desirable." *Northwestern National Bank of Minneapolis v. Fox & Co.*, 102 F.R.D. 507, 511 (S.D.N.Y.1984).

In the present case, the exact number of affected persons is not known to the plain-

tiff. However, HHC facilities have conducted discretionary drug testing prior to 1987. Patricia Mooney, the Deputy Executive Director of Ambulatory Services at Woodhull Hospital was tested for drugs in 1982 upon the commencement of Employee Health Services program. Mooney Dep. at 14. Plaintiff also was tested for drugs without his consent, in July, 1984, while he was enrolled in the Physician Assistant Program at Harlem Hospital, a HHC facility. Affirmation of James Meyerson, Exhibit I.

Plaintiff's lack of knowledge as to the exact number of affected persons is not a bar to maintaining a class action, when defendants have the means to identify those persons at will. *See, Folsom v. Blum,* 87 F.R.D. 443, 445 (S.D.N.Y.1980). In the present case, defendants have the means to identify which employees were tested for drugs, and which consent forms, if any, were given to each employee tested. Defendants need only examine employees' personnel files to obtain such information.

Although the members of the class are not identified, nor ascertained, it is reasonable to conclude that their numbers will probably be sufficient to allow a certification. Plaintiff asserts that at least 100 employees at the Hospital and numerous other employees of HHC, out of the Hospital but working in similar facilities, have been tested for drugs on a selective basis, without proper notification. Courts in this Circuit routinely have held that classes smaller than the class proposed satisfy the numerosity requirement. *See e.g., Korn v. Franchard Corporation,* 456 F.2d 1206, 1209 (2d Cir.1972) (certifying class which may be limited to 70 investors); *Fidelis Corporation v. Litton Industries, Inc.,* 293 F.Supp. 164, 170 (S.D.N.Y.1968) (certifying class of 35–70 individuals); *Koster v. Perales,* 108 F.R.D. 46, 49 (E.D.N.Y.1985) (certifying class of homeless people); *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.,* 88 F.R.D. 38, 44 (S.D.N.Y.1980) (certifying class of 87 members).

Thus, pending discovery as to the number of HHC employees who were selectively tested for drugs without notice, conditional class certification should be granted. *See Vulcan Society v. Fire Dept. of City of White Plains,* 82 F.R.D. 379 (S.D.N.Y. 1979) (class certification granted pending discovery regarding number of employees).

*2. Commonality*

■ Together, Fed.R.Civ.P. 23(a)(2) and 23(b)(3) require that before a class can be certified it must be shown that (1) class members share common issues of law and fact, and (2) that common issues predominate over issues unique to individual class members. The rules do not require that all questions of law or fact are common; they only require that common questions predominate over individual ones. *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R. D. 87, 93 (S.D.N.Y.1981). *Id.* at 93. Such a nucleus of issues is evident here.

■ Defendants argued that the key to plaintiff's case is his state of mind, an issue unique to plaintiff's case alone. Defendants maintain that the old form given to plaintiff mentioned all tests required by the "City Health Code," a code that explicitly includes drug testing. Defendants argue that while plaintiff may not have been aware that the Code included such tests, there is no evidence that other employees had a similar understanding. Thus, defendants conclude, a resolution of plaintiff's claim will in no way resolve other prospective claims.

This Court, however, does not find plaintiff's subjective understanding to be of primary importance. While plaintiff's subjective understanding may be considered, the essential questions concern the Hospital's objective drug testing policies and their implementation. Common issues of fact and law exist as to whether HHC facilities have reasonably notified employees of their drug testing procedures and policies, and whether the failure to do so violates employees' civil and constitutional rights. Additionally, common issues of fact and law exist as to whether HHC facilities have conducted selective drug testing, based upon the race or national origin of the tested employee, in violation of employees' civil and constitutional rights under the

Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Acts of 1866 and 1871, 42 U.S.C. §§ 1981, 1982.

The conclusion that plaintiff's claims fulfill the commonality requirement of Rule 23 is supported by the Second Circuit's decision in *Port Authority Police Benevolent Association v. Port Authority,* 698 F.2d 150 (2d Cir.1983). There, the court held that certification had been improperly denied where, as here, plaintiffs challenged a *practice* of defendants, as opposed to defendants' conduct with respect to each individual plaintiff. *Id.* at 153–154. Several other courts in this Circuit similarly have held that the existence of individualized factors or variations does not preclude finding of existence of common questions where pattern, practice or policy exists. *See e.g., Kirkland v. New York State Department of Correctional Services,* 520 F.2d 420, 427 (2d Cir.1975); *Laurido v. Simon,* 489 F.Supp. 1169, 1175 (S.D.N.Y. 1980); *Somerville v. Major Exploration, Inc.,* 102 F.R.D. 500, 504 (S.D.N.Y.1984); *Women's Committee, et al. v. National Broadcasting Co., Inc.,* 71 F.R.D. 666, 669 (S.D.N.Y.1976).

The individual differences between plaintiff and other class members do not affect plaintiff's central claim that all members of the class have been denied their rights because of HHC's practice of selectively testing employees for drugs without notice. Therefore, the commonality requirement of Rule 23(a) is satisfied.

### 3. *Typicality*

■ Plaintiff's claims satisfy the typicality requirement of Rule 23(a) if they arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Dura–Bilt v. Chase Manhattan Corp., supra,* 89 F.R.D. at 99. Under such circumstances, "by advancing their own interests, plaintiffs will advance the interests of the class." *Id.* (citations omitted). Since the same Hospital procedures give rise to the claims of all

members of the proposed class, plaintiff's claim satisfies the typicality requirement.

Defendants have argued that plaintiff's claim that he was misled by the Health Services's physician to submit to a test could not be typical to other members of the class. Indeed, plaintiff's drug testing was unusual because, unlike most employees, plaintiff was tested twice. Also, unlike some members of the proposed class, plaintiff's test results were negative.

It is not necessary, however, to have a representative claim that is identical to those of the class members. *See e.g., Wilder v. Bernstein,* 499 F.Supp. 980, 992–993 (S.D.N.Y.1980); *Vulcan Society of Westchester v. Fire Dep't of City of White Plaines, supra,* 82 F.R.D. at 401. Differences in the degree of harm suffered, or in the ability to prove damages, do not necessarily vitiate the typicality of a plaintiff's claim. *Mersay v. First Republic Corporation of America,* 43 F.R.D. 465, 468–69 (S.D.N.Y.1968). As noted above, the main issues in this case, concerning HHC facilities' drug testing policies and their implementation, are common to all employees.

"Whether plaintiff will or will not be successful at trial in proving damages is immaterial at this stage of the proceeding." *Sanders v. Faraday Laboratories, Inc.* 82 F.R.D. 99, 101 (E.D.N.Y.1979), *citing Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2152–2153, 40 L.Ed.2d 732 (1974). Plaintiff need only demonstrate that he "possess[es] the same interest and suffer[s] the same injury" as the proposed class members. *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974). Because plaintiff alleges that he was deprived his rights under a policy and practice affecting many, sufficient commonality exists to warrant class action.

### 4. *Representation*

■ In determining whether a plaintiff will fairly and adequately protect class interests, courts have asked two questions: (1) whether plaintiffs have any interests which are antagonistic to absent class

members, and (2) whether the representative party and his attorney can prosecute the action vigorously. *Akerman v. Oryx Communications, Inc.*, 609 F.Supp. 363, 378 (S.D.N.Y.1984); *Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736, 740 (S.D.N.Y.1979).

In determining the adversity of interest " 'only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.' " *Kuck v. Berkey Photo, Inc., supra*, 81 F.R.D. at 740, *citing* 7 Wright & Miller, Federal Practice & Procedure § 1768 at 639 (1972). Plaintiff is alleging that there has been a drug testing violation and his interests are common with all employees similarly situated. As noted earlier, plaintiff's claims and interests are virtually identical with those of other members of the class and, therefore, the plaintiffs have no significant antagonistic interests.

As to counsel's competency, no one has challenged the representation, and the Court will not inquire further into this matter at this point. The Court notes, however, that plaintiff's counsel has been actively engaged in the preparation and prosecution of several class action litigations. *See, e.g., Hart v. Community School Board # 21*, 512 F.2d 37 (2d Cir.1975); *Pride v. Community School Board # 18*, 482 F.2d 257 (2d Cir.1973); *Graham v. State of New York*, 664 F.Supp. 166 (S.D. N.Y.1987); *Laurido v. Simon, supra* 489 F.Supp. 1169 (S.D.N.Y.1980); *Arthur v. Starrett City Associates*, 98 F.R.D. 500 (D.N.Y.1983).

B. *Rule 23(b)*

 In addition to requirements prescribed by Fed.R.Civ.P. 23(a), a moving party must demonstrate that the putative class also fits into one of the three categories set forth in section 23(b). *Marcera v. Chinlund*, 595 F.2d 1231, 1237 (2d Cir.1979); *Akerman v. Oryx Communications, Inc., supra*, 609 F.Supp. at 378–79; *Laurido v. Simon, supra*, 489 F.Supp. at 1174–75. Plaintiff contends that his proposed class falls under Fed.R.Civ.P. 23(b)(2), which states that a class action may be maintainable if:

(2) the party opposing the class has acted or refused to act on the grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ...

Defendants assert that the Hospital has adopted new consent forms that expressly state that the applicants will be tested for drugs. Thus, defendants contend, injunctive relief is not appropriate in this case. However, plaintiff also seeks declaratory relief. Plaintiff has requested a declaration that certain rights of the members of the class have been violated. Moreover, he has demanded that all persons whose rights were violated be identified and informed of such violations, and that the Hospital expunge employees' personnel records. Motion for Declaration of this Matter as Class Action, ¶ 30. These issues have not been mooted by the issuance of the new consent forms.

Furthermore, a class action may be appropriate where a monetary award is but one element of an equitable remedy. *Brandt v. Owens–Illinois, Inc.*, 62 F.R.D. 160, 168 (S.D.N.Y.1973). "A claim for damages may properly be considered in a (b)(2) action as long as the monetary relief is not predominant." *Ste. Marie v. Eastern R.R. Association*, 72 F.R.D. 443, 450 (S.D.N.Y. 1976) (citations omitted). Courts have been very flexible in certifying classes for liability issues, while reserving the determination of individual damages for later stages in the proceedings. *Marcera v. Chinlund, supra*, 595 F.2d at 1239. Thus, even though plaintiff seeks monetary damages in conjunction with a declaratory judgment, a class action is appropriate.

The present situation is well suited for class action treatment, since a finding that defendants' policies and practices were unlawful would affect all employees who were tested for drugs without their consent. This is a classic case where " 'the prosecution of separate actions ... would create a risk of ... inconsistent or varying adjudications.' " *Folsom v. Blum*, 87 F.R. D. at 445. In short, prosecution of this action will "achieve economies of time, and

expense and promote uniformity of decisions as to persons similarly situated." *Dolgow v. Anderson,* 43 F.R.D. 472, 488 (E.D.N.Y.1968) (citing Advisory Committee Notes to Rule 23 39 F.R.D. at 102–03).

Thus, for the reasons stated above, the Court conditionally grants plaintiff's motion for certification, pending further discovery relating to the numerosity requirement. Rule 23 gives the court power to consider individualized problems as they appear. The Court may exercise its discretion to redefine the class as this case progresses.

### III. *Conclusion*

The aforementioned requirements of Rule 23 having been preliminarily satisfied, conditional class certification is hereby granted. The class shall be comprised of all employees of HHC facilities, from 1984 to the present, who have been subject to drug testing without their consent. This action shall proceed in accordance with the determinations here made. Counsel for both parties shall meet for a status conference on January, 27 at 3:30. Parties shall submit procedures for notifying the class one week prior to this date.

SO ORDERED.