**Immacula ANTENOR, et al., Plaintiffs,**

**v.**

**D & S FARMS, et al., Defendants.**

**No. 90–868–Civ–DLG.**

United States District Court,
S.D. Florida.

Feb. 7, 1999.

---

Gregory Scott Schell, Florida Rural Legal Services, Inc., Belle Glade, FL, Rosario Lozada Schrier, Florida Immigrant Advocacy Center, Miami, FL, for plaintiff.

David J. Stefany, Allen, Norton & Blue, Tampa, FL, Monte B. Lake, McGuiness & Williams, Washington, DC, for defendant.

### ORDER

TURNOFF, United States Magistrate Judge.

This matter comes before the Court on Defendants' Joint Motion for Summary Judgment (D.E.199). For the reasons stated below, this Court will deny Defendants' Motion and enter factual findings pursuant to Federal Rule of Civil Procedure 56(d).

### Procedural Background

This action began almost nine years ago with a Complaint filed against two South Miami–Dade County farms—D & S Farms and Iori Farms, Inc. (collectively, "the growers"), Also named as defendants were the growers' labor contractor, Virgil Turke, and Mr. Turke's company, Ag–Tech Services, Inc. ("Ag–Tech"). Plaintiffs—including 17 class representatives, 612 named individuals, and a class of as many as 5000 (collectively, "the farm workers")—are migrant workers who picked snap beans in Miami–Dade County during the 1985–89 growing seasons.

On April 4, 1990, Plaintiffs filed suit against the growers, Turke, and Ag–Tech for violations of the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801–72 ("AWPA"),[1] and the Fair Labor Standards Act, 29 U.S.C. §§ 201–19 ("FLSA"). The farm workers allege that the growers[2] violated the

---

1. The Migrant and Seasonal Agricultural Worker Protection Act will be referred to as the "AWPA" throughout this Order. Although the Act is occasionally referred to as the "MSPA" or the "MSAWPA," the United States Supreme Court has used the acronym "AWPA" in its only relevant opinion. *Adams Fruit Co., Inc. v. Barrett,* 494 U.S. 638, 640, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990).

2. On October 23, 1990, the Clerk entered defaults against Turke (D.E.14) and Ag–Tech (D.E.15) for failing to respond to Plaintiffs' Complaint. On December 28, 1990, this Court declined to enter final judgment against Defendants Turke and Ag–Tech because of outstanding issues of joint and several liability. (D.E.17). Since then, neither Turke nor Ag–Tech has sought to offer any defense in this action.

AWPA by failing to keep hourly records, failing to pay unemployment compensation and social security taxes, and failing to pay wages promptly when due. 29 U.S.C. §§ 1831(c)(1), (2) & 1832(a), (c) (1998).[3] The farm workers also allege that the growers violated the FLSA by failing to keep hourly records and by failing to pay the minimum wage. 29 U.S.C. §§ 206(a), 211(c) (1998).

On August 26, 1993, this Court certified Plaintiffs as a class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. (D.E.67, 78). Plaintiffs seek both damages and injunctive relief on their claims. (D.E.1, 44).

On August 2, 1993, following discovery, the parties filed cross motions for summary judgment on the growers' liability under the FLSA and the AWPA. (D.E.56, 57, 61). The farm workers argued that the growers were liable because they were "joint employers" along with Turke and Ag–Tech. The growers countered that they were entitled to summary judgment because Turke was the farm workers' sole employer.

This Court granted summary judgment to the growers and denied summary judgment to the farm workers, finding that Turke was the workers' sole employer and that the growers were therefore entitled to judgment as a matter of law. (D.E.91, 111). On appeal, however, the Eleventh Circuit reversed (D.E.131), holding that "the evidence before the district court indicated that the farm workers were jointly employed by Turke and the growers under the AWPA and the FLSA." *Antenor v. D & S Farms*, 88 F.3d 925, 938 (11th Cir. 1996).

On remand, the farm workers filed a Renewed Motion for Partial Summary Judgment on the joint employer issue. (D.E.123). On September 19, 1997, this Court granted the farm workers' Motion,

finding that "the farm workers were jointly employed by Ag–Tech and the Defendant Growers." (D.E.143, 149). The parties then engaged in additional pre-trial discovery.

On March 27, 1998, pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before a United States magistrate judge for the final disposition of all motions for summary judgment. (D.E.159). On August 11, 1998, this Court referred all such motions to the undersigned. (D.E. 176).

On December 12, 1998, the growers filed their present Joint Motion for Summary Judgment (D.E.199). On December 28, 1998, the farm workers filed a response in opposition, including numerous deposition excerpts. (D.E.214–45). On December 31, 1998, the growers filed a Reply Memorandum (D.E.248), and, on January 13, 1999, this Court heard oral argument. (D.E.212).

*Legal Standard*

In general, summary judgment is appropriate only where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, this Court must view the evidence, as well as all justifiable inferences drawn from that evidence, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the movant meets its burden, the burden then shifts to the non-moving party to establish that a genuine dispute of material fact exits. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir.1993). If the evidence relied on is such that a reasonable jury could return a verdict in favor of

---

**3.** The farm workers previously alleged that the growers violated the AWPA by using labor contractors to recruit and transport them without reasonably ensuring that those con- tractors were registered and insured. 29 U.S.C. §§ 1841(b)(1)(C), 1842 (1998). That claim, however, has been settled and is no longer at issue. (D.E. 200 at 4 n. 1).

the non-moving party, then the court should refuse to grant summary judgment. *Hairston*, 9 F.3d at 919.

### Factual Background

Between 1985 and 1989, Defendant growers engaged in the production of snap beans in South Miami–Dade County. Statement of Undisputed Facts at ¶ 11 (D.E.200). The growers' combined 1600 acres of beans during the period represented approximately 10 percent of the total annual production for the region. Statement of Undisputed Facts at ¶ 12 (D.E.200).

The growers contracted with Ag–Tech for labor to harvest their beans on a day-to-day basis and for a set price of $3.90 per hamper of beans picked. Statement of Undisputed Facts at ¶ 25 (D.E.200). In return, Ag–Tech: (1) supplied farm workers to pick the beans; (2) helped supervise the bean harvest operation; (3) agreed to administer payroll for the farm workers, including payment of the minimum wage; (4) agreed to maintain required insurance; (5) agreed to keep all records; and (6) agreed to pay appropriate state and federal taxes for the workers. Statement of Undisputed Facts at ¶ 26 (D.E.200).

From the $3.90 per hamper of beans, the growers retained approximately $0.11 to pay for workers compensation insurance. (D.E.64, 226, 243). Out of the remaining $3.79, Ag–Tech was responsible for paying the farm workers' wages, any fees to subcontractors, and its own operating expenses, including office clerical workers and field supervisors. (D.E.64, 226, 243).

In 1989, Ag–Tech lost its license as a labor contractor because it had failed to pay "the minimum wage," "to keep payroll records, issue earnings reports to workers, pay wages when due, and provide insurance coverage on the vehicles used to transport the Plaintiffs to their farms." Defendants' Statement of Undisputed Facts at 8 (D.E.200); *see also* Deposition of Virgil Turke (D.E.64). Plaintiffs contend that they are the workers who picked the snap beans on Defendants' farms from 1985–89, and, further, that they are the workers whom Ag–Tech victimized in violation of the FLSA and AWPA.

### Analysis

■ Defendants offer three arguments in support of summary judgment: (1) Plaintiffs cannot prove standing; (2) Plaintiffs' FLSA and AWPA claims are barred by the relevant statutes of limitation; and (3) Plaintiffs are not entitled to liquidated damages.[4] This Court, however, finds each of Defendants' arguments unpersuasive.

### I. STANDING

Defendants argue that Plaintiffs lack standing because they cannot prove they worked on Defendants' farms. Defendants' Memorandum in Support of Summary Judgment at 45–56 (D.E.200). Defendants' arguments on this issue, however, are nothing new. At least twice before, Defendants have questioned Plaintiffs' standing—each time

---

4. The Court notes that it may not enter summary judgment on a portion of a claim—such as the issue of liquidated damages (a potential remedy for one of Plaintiffs' causes of action). *See, e.g., Warner v. United States*, 698 F.Supp. 877, 878–79 (S.D.Fla.1988) (noting that "a party may not make an independent Rule 56(d) motion" for a finding of fact on an issue that does not dispose of an entire cause of action); *see also Capitol Records, Inc. v. Progress Record Distributing, Inc.*, 106 F.R.D. 25, 28 (N.D.Ill.1985) (holding that a party may not move for partial summary judgment "on less than a single claim"). For example, even

if this Court were to agree with Defendants and bar Plaintiffs from recovering liquidated damages, that finding would not result in an appealable "judgment" within the meaning of Rule 56.

> Although the issue of liquidated damages would more properly be raised through a motion in limine, Rule 56(d) nevertheless authorizes courts to make findings of fact when considering motions for summary judgment. This Court, therefore, will assess Defendants' arguments on the availability of liquidated damages in the context of Rule 56(d).

without success. Defendants first argued Plaintiffs' alleged lack of standing in opposition to class certification. (D.E. 48 at 2–3).[5] In certifying the class, however, this Court rejected Defendants' standing argument, finding that "Plaintiffs have standing to sue" and that Plaintiffs' "injury is ·fairly traceable to Defendants' unlawful conduct because Plaintiffs' exhibits reveal that they worked on Defendants' farms." (D.E. 67 at 3; *see also* D.E. 78).

▮ To be sure, a Plaintiffs' lack of standing may be raised at any point in the proceedings. *United States v. Viltrakis,* 108 F.3d 1159, 1160 (9th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 126, 139 L.Ed.2d 76 (1997). Further, in deciding whether to certify the class, this Court was required to look only to the allegations of the Complaint—allegations that the Court assumed to be true. *Ventura v. New York City Health & Hospitals Corp.,* 125 F.R.D. 595, 598 (S.D.N.Y.1989).

On summary judgment, however, a different analysis obtains. Once a moving defendant has met its initial burden, the plaintiff must come forward with evidence demonstrating the existence of a genuine issue of material fact. *Lewis v. Casey,* 518 U.S. 343, 358, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (holding that a court may revisit standing on a motion for summary judgment, even though a plaintiff's claims previously survived a motion to dismiss on similar grounds).

In deciding whether or not to grant summary judgment, standing is no different than any other mixed question of law and fact. *Church of Scientology Flag Serv. Org. v. City of Clearwater,* 777 F.2d 598, 607 (11th Cir.1985), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 656 (1986) ("Standing is a mixed question of fact and law"). As the Ninth Circuit recently held—reversing a district court's

grant of summary judgment in a class action for lack of standing:

> We review the district court's standing determination and grant of summary judgment de novo. At the summary judgment stage, we affirm only if Plaintiffs have not adduced any evidence from which they may be able to establish standing. We construe all evidence in the light most favorable to Plaintiffs.

*Hodgers–Durgin v. de la Vina,* 165 F.3d 667, 678 (9th Cir.1999) (citations omitted).

The requirement that· all parties have standing originates in the case and controversy clause of Article III. *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 151, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). Stated in terms of standing, a plaintiff must " 'allege[ ] such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (*quoting Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).

As the Eleventh Circuit recently noted, "The federal judiciary may not reach out to decide disputes which, although they may redress social wrongs, do not address an 'injury in fact' to the plaintiff who has brought the charge before it." *Brooks v. Blue Cross & Blue Shield,* 116 F.3d 1364, 1376 (11th Cir.1997). To meet the constitutional standing requirement, therefore, a plaintiff must show "(1) that he has suffered an actual or threatened injury, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable ruling." *Harris v. Evans,* 20 F.3d 1118, 1121 (11th Cir.) (en banc), *cert. denied,* 513 U.S. 1045, 115 S.Ct. 641, 130 L.Ed.2d 546 (1994).

**5.** Defendants' also raised Plaintiffs' alleged lack of standing in support of their first Motions for Summary Judgment. (D.E.56, 57).

The district court, however, declined to reach standing, instead granting summary judgment on the joint employer issue.

## A. Standing of the Class

Defendants seek summary judgment against the entire class of Plaintiffs. (D.E. 200 at 32) (arguing that standing must be demonstrated "by each and every member of the class"). Defendants, however, misperceive the nature of standing in a class action.

▆▆▆ Once a class is certified and class representatives are appointed, only those class representatives—who are themselves, by definition, typical of the class—must demonstrate their standing in opposition to summary judgment. 1 HERBERT B. NEWBERG & ALBA CONTE, 1 NEWBERG ON CLASS ACTIONS § 2.07, at 40–41 (2d ed.) (noting that if named class plaintiffs have standing, the standing of class members is satisfied by the requirements for class certification); *accord Rozema v. Marshfield Clinic*, 174 F.R.D. 425, 444 (W.D.Wis.1997) ("Those represented in a class action are passive members and need not make individual showings of standing."). Further, a class needs only one viable class representative. *See Swain v. Hoffman*, 547 F.2d 921, 924 (5th Cir.1977).

▆▆▆ In this case, therefore, Defendants' request for summary judgment against the class as a whole will rise or fall depending on the class representative's proof of standing.[6] Here, the record reveals a genuine issue of material fact concerning whether class representative Immacula Antenor has standing.

First, there is little question that Ms. Antenor has adduced record evidence demonstrating she suffered an actual or threatened injury. *See, e.g.*, Deposition of Immacula Antenor at 19 (D.E.216). Indeed, Defendants do not seriously dispute that Ag–Tech (for whom each of the Plaintiffs worked) failed to pay "the minimum wage during certain weeks," "to keep payroll records, issue earnings reports to workers, pay wages when due, and provide insurance coverage on the vehicles used to transport the Plaintiffs to their farms." Defendants' Statement of Undisputed Facts at 8 (D.E.200). While Defendants characterize such AWPA and FLSA violations as mere "allegations," those allegations are amply supported by the record. *See, e.g.*, Deposition of Virgil Turke (D.E.64).

Second, Defendants concede that Immacula Antenor "can arguably prove that [she] worked for the grower Defendants." *See* Defendants' Memorandum in Support of Summary Judgment at 36 (D.E.200).[7] Such a concession at least establishes a genuine issue of material fact that Ms. Antenor's injury is fairly traceable to the challenged conduct of the defendants. *Del Raine v. Williford*, 32 F.3d 1024, 1034 (7th Cir.1994) (noting that an "arguable factual dispute" precludes summary judgment).

Third, Ms. Antenor seeks, among other relief, an injunction directing the defendants: (1) to pay her Social Security wages; and (2) to file forms W–2 and W–3

6. The Court notes that Defendants have not moved to decertify the class. Further, Defendants do not argue on summary judgment that any class representative fails to represent the class adequately. *cf. Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974) ("To have standing to sue as a class representative it is essential that a plaintiff must be a part of that class," and "possess the same interest and suffer the same injury shared by all members of the class he represents."); *see also* 7B CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1785.1, at 141 ("As long as the representative parties have a direct and substantial interest, they have standing; the question whether they may be allowed to present claims on behalf of others ... depends not on standing, but on an assessment of typicality and adequacy of representation").

7. For example, Ms. Antenor has produced a wage statement indicating that she picked six boxes of snap beans on November 18, 1987 with Ag–Tech subcontractor Belony Examo's crew. Deposition of Immacula Antenor (D.E. 216). A daily harvest statement for that same date also confirms that Examo's crew picked snap beans for both D & S and Iori Farms on November 18, 1987. *Id.*

with the Social Security Administration. (D.E.1, 44). If she were to succeed at trial, such an injunction would certainly afford Ms. Antenor relief to redress her injuries. *See, e.g., International Longshoremen's & Warehousemen's Union v. Meese*, 891 F.2d 1374, 1379 (9th Cir.1989) (holding that a plaintiff's request for an injunction forcing an employer to certify its workers under relevant labor statutes satisfies the standing requirement of an injury "likely to be redressed by a favorable ruling"). This Court, therefore, will deny Defendants' Joint Motion for Summary Judgment against Ms. Antenor and the class previously certified in this action.

## B. Standing of the Named Plaintiffs

A finding of standing in favor of a class representative, however, does not end the inquiry—particularly when the standing of other named plaintiffs is also at issue. *Hodgers–Durgin v. de la Vina*, 165 F.3d 667, 680. As the Ninth Circuit recently held, class certification supplies the class with " 'a legal status separate from the interest' " of any named plaintiffs. *Id.* (*quoting LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir.1985)). That separate legal status in turn requires a separate showing of standing from named plaintiffs, who—unlike unnamed class members—materially and personally participate in the action. 1 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 2.07, pp. 2–40 to 2–41 (3d ed.1992) (noting that unnamed plaintiffs "need not make any individual showing of standing [in order to obtain relief], because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court").

The 612 named plaintiffs in this action have certainly raised genuine issues of material fact concerning the first and third prongs of the standing analysis. Like Ms. Antenor, the named plaintiffs suffered actual or threatened injury through Ag-

Tech's failure to pay "the minimum wage during certain weeks," "to keep payroll records, issue earnings reports to workers, pay wages when due, and provide insurance coverage on the vehicles used to transport the Plaintiffs to their farms." Defendants' Statement of Undisputed Facts at 8 (D.E.200); *see also* Deposition of Virgil Turke (D.E.64). Also like Ms. Antenor, the named plaintiffs seek an injunction directing the defendants: (1) to pay Social Security wages; and (2) to file forms W–2 and W–3 with the Social Security Administration. (D.E.1, 44).

Unlike Ms. Antenor, however, the named plaintiffs cannot produce documentary proof directly linking their work on the 1985–89 snap bean harvests to the Defendant farms. Instead, the named plaintiffs rely on their deposition testimony and sworn answers to interrogatories in which they affirm that: (1) they picked snap beans for Virgil Turke and Ag–Tech during the 1985–89 growing seasons; and (2) they worked for particular Ag–Tech subcontractors who provided labor to the Defendant growers on particular days. *See* Attachments to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment (D.E.214–45). Such testimony, however, does not stand alone.

Supporting the named plaintiffs' testimony are: (1) daily harvest tallies linking the particular subcontractors for whom the named plaintiffs worked to the Defendant farms; and (2) Virgil Turke's deposition testimony that, after the 1985–86 snap bean harvest, his crews worked primarily with D & S and Iori Farms. *Id.;* Deposition of Virgil Turke (D.E.64). Indeed, Turke testified that his crews worked *exclusively* for D & S and Iori Farms during the 1986–87 snap bean harvest. *Id.* This fact, coupled with the named plaintiffs' sworn testimony that they picked beans with Turke during this period suffices at least to raise a genuine issue of material fact that the named plaintiffs have stand-

ing.[8]

## II. STATUTES OF LIMITATION

Defendants next argue that Plaintiffs' FLSA claims are barred by the applicable statutes of limitation. (D.E. 200 at 56–61). FLSA claims are generally barred if brought two years after they arise. 29 U.S.C. § 255(a) (1998).[9] Because this action was brought on April 4, 1990, Defendants argue that any of Plaintiffs' claims arising before April 4, 1988 are automatically barred. This Court, however, disagrees.

■ Defendants make only nodding reference to Plaintiffs' allegations that Defendants wilfully violated the Act. To be sure, Defendants argue generally that "Plaintiffs point to no conduct by grower Defendants sufficient to support a finding of wilfulness." Defendants, however, fail to rebut record evidence that: (1) the United States Department of Labor repeatedly notified Defendants of Ag–Tech's violations of federal law; and (2) Defendants were aware that Ag–Tech was not paying minimum wage to the migrant workers picking snap beans on Defendants' farms. *See* Deposition of George Hourihan at 33–37 (D.E.223); Deposition of Virgil Turke at Vol. I, pp. 106–07, Vol. II, pp. 43–44, Vol. III, pp. 118–19, 126–27 (D.E.64). Such testimony at least creates a genuine issue of material fact concerning the wilfulness of Defendants' alleged FLSA violations. As the Supreme Court has held in the context of the FLSA:

> The word "willful" is widely used in the law; and, although it has not by any means been given a perfectly consistent

interpretation, it is generally understood to refer to conduct that is not merely negligent. The standard of willfulness that was adopted in *Thurston*—that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—is surely a fair-reading of the plain language of the [Fair Labor Standards] Act.

*McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988). Accepting as true, as this Court must, all factual inferences in favor of the Plaintiff, this Court cannot say as a matter of law that Defendants did not wilfully violate the FLSA. A genuine issue of fact, therefore, remains to be tried concerning whether Defendants acted wifully, and, therefore, whether Plaintiffs FLSA claims arising between April 4, 1987 and April 3, 1988 are governed by the two or three year FLSA statutes of limitation.

■ Plaintiffs, however, ask this Court to go further—arguing that even their FLSA claims arising prior to April 4, 1987 remain viable. In support, Plaintiffs argue that certain of Defendants' actions equitably tolled the statute of limitations. This Court, however, cannot agree.

In support of their equitable tolling argument, Plaintiffs rely primarily on *Bonham v. Dresser Indus.,* 569 F.2d 187 (3d Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), in which the Third Circuit held that an employer's failure to post a required FLSA notice explaining the Act equitably tolled the FLSA statute of limitations. 569 F.2d at 193; *see*

---

8. The parties differ sharply over whether Plaintiffs are entitled to an adverse inference of employment from Ag–Tech's failure to keep proper records. *Compare* Defendant's Memorandum in Support of Summary Judgment at 45–56 *with* Plaintiff's Opposition to Summary Judgment at 14–20. Although the Court finds it unnecessary to reach this issue, it does note that: (1) the defendant growers are joint employers with Ag–Tech (and, therefore, jointly responsible for any lax record keeping concerning any workers actually employed on

Defendants' farms); and (2) *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), essentially estops a party from failing to keep employment records in contravention of law and then later relying on the absence of those same records to defeat a FLSA claim.

9. Claims involving wilful violations of the FLSA may be brought within three years. 29 U.S.C. § 255(a) (1998).

*also Kamens v. Summit Stainless, Inc.,* 586 F.Supp. 324, 328 (E.D.Pa.1984) (same); *accord Equal Employment Opportunity Comm'n v. Joseph Paolino & Sons, Inc.,* 1992 WL 382349, at \*2 (E.D.Pa. Dec.11, 1992). In further support, Plaintiffs argue that "equitable tolling is particularly appropriate in cases involving lay persons, unfamiliar with the complexities of the law." Plaintiffs' Opposition to Summary Judgment at 23 (*citing Kocian v. Getty Refining & Marketing Co.,* 707 F.2d 748, 755 (3d Cir.), *cert. denied,* 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983)). While this Court agrees that migrant workers are generally among those most unfamiliar with the complexities of the law, the Eleventh Circuit has nevertheless resolved this issue.

In *McClinton v. Alabama By–Products Corp.,* 743 F.2d 1483 (11th Cir.1984), and *Kazanzas v. Walt Disney World Co.,* 704 F.2d 1527 (11th Cir.), *cert. denied,* 464 U.S. 982, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983), the Eleventh Circuit rejected *Bonham's* equitable tolling analysis. In *Kazanzas,* the court declined to allow equitable tolling based on an employer's failure to post a notice which did not explicitly advise employees of the applicable two-year statute of limitations. 704 F.2d at 1530. Here, Plaintiffs do not dispute that the FLSA poster required by 29 C.F.R. § 516.4 "makes no mention of the applicable two year statute of limitations." Defendants' Joint Reply in Support of Summary Judgment at 8 (D.E.248). Similarly, in *McClinton,* the Eleventh Circuit stated that:

> Although the failure of the employer to display the poster may toll the 180–day notification period, it will not normally toll the two-year statute of limitations for bringing the action in court, which continues to run from the date of the alleged wrongful act.

743 F.2d at 1486 n. 5. This Court, therefore, will follow the Eleventh Circuit's guidance and enter a Rule 56(d) factual finding that any of Plaintiff's FLSA claims arising prior to April 4, 1987 are barred.[10]

## III. LIQUIDATED DAMAGES

■ Defendants finally argue that Plaintiffs cannot recover liquidated damages under the FLSA. Defendants' Memorandum in Support of Summary Judgment at 61–64 (D.E.200). This Court, however, disagrees.

As the Middle District of Florida has held, "liquidated damages [for violations of the FLSA] are mandatory absent a showing by Defendants of good faith." *Leach v. Johnston,* 812 F.Supp. 1198, 1214 (M.D.Fla.1992); *accord Joiner v. Macon,* 814 F.2d 1537, 1539 (11th Cir.1987) (holding that an employer who knew or who had reason to know that the FLSA applied cannot establish good faith as a defense). While Defendants point to a number of facts which they contend demonstrates their good faith, Plaintiffs disagree—relying on testimony both from Mr. Turke and from a former Department of Labor employee contending that the Defendants were well aware of Ag–Tech's repeated violations of the FLSA. (D.E.64, 223). Based on the record, therefore, this Court cannot conclude that there is no genuine issue of material fact concerning the availability of liquidated damages under the FLSA.

### Conclusion

Accordingly, it is hereby ORDERED and ADJUDGED that Defendants' Joint Motion for Summary Judgment (D.E.199) is DENIED. Pursuant to Federal Rule of Civil Procedure 56(d), this Court finds that Plaintiffs' Fair Labor Standards Act claims arising prior to April 4, 1987 are

10. This Court notes that Plaintiffs have conceded—both in their papers and at oral argument—that a four year statute of limitations applies to Plaintiffs' AWPA claims. Plaintiffs' Opposition to Summary Judgment at 26 (D.E. 215) (conceding that their "AWPA claims arising before April 4, 1986 are untimely"). This Court, therefore, also enters a Rule 56(d) factual finding that any of Plaintiff's AWPA claims arising prior to April 4, 1986 are barred.

BARRED by the applicable statute of limitations. Pursuant to Federal Rule of Civil Procedure 56(d), this Court also finds that Plaintiffs' Migrant and Seasonal Agricultural Worker Protection Act claims arising prior to April 4, 1986 are BARRED by the applicable statute of limitations.